### CONNELLEY v. PENNSYLVANIA R. CO.

(Circuit Court of Appeals, Third Circuit. December 9, 1915.)

No. 1988.

MASTER AND SERVANT ⬅⬅210—MASTER'S LIABILITY FOR INJURY TO SERVANT—
ASSUMPTION OF RISK.

A railroad company which operates its trains in a proper and customary manner is not chargeable with negligence which renders it liable for the killing by one of such trains of a trackwalker, who assumes the risk from such danger as necessarily incidental to his employment.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 554–556; Dec. Dig. ⬅⬅210.]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Action at law by Ellen Connelley, administratrix, against the Pennsylvania Railroad Company. Judgment for defendant (221 Fed. 508), and plaintiff brings error. Affirmed.

Francis Rawle and Joseph W. Henderson, both of Philadelphia, Pa., for plaintiff in error.

John Hampton Barnes, of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below, Mrs. Ellen Connelley, administratrix of Thomas Connelley, brought suit against the Pennsylvania Railroad Company. Her cause of action was for damages alleged to have accrued to her by virtue of the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [Comp. St. 1913, §§ 8657–8665]), through the negligence of said railroad in

causing the death of Thomas Connelley, her husband and its employé. She recovered a verdict and judgment in that court. On writ of error sued out by the railroad, this court, in an opinion reported at 201 Fed. 54, 119 C. C. A. 392, 47 L. R. A. (N. S.) 867, reversed the judgment recovered by Mrs. Connelley. Reference to that opinion avoids needless repetition of the facts. The question involved in that writ and in the present one was whether the proofs showed any negligence on the part of the railroad which constrained submission of the question of negligence to the jury. It was there in substance held there was no such proof; that a railroad trackwalker employed to walk over, watch, and repair tracks where there is a constant passing of trains, necessarily assumes the risk of being struck by trains properly operated; and that no negligence on the part of the railroad was shown by the proofs in the case; and that plaintiff was not entitled to recover. Thereupon plaintiff petitioned the Supreme Court for a writ of certiorari, and that court (in pursuance of a stipulation filed, see 231 U. S. 764, 34 Sup. Ct. 327, 58 L. Ed. 472), but without any expression on the merits of the case, reversed the judgment of this court and remanded the cause for retrial in the court below. On such retrial the only testimony give was the viva voce testimony of three witnesses who had been called at the former trial, viz., Mrs. Ellen Connelley, the widow of the decedent, John J. Fredericks, and Harry Hurst, and the reading of the testimony, at the former trial, of William Rowan who had since died. Neither Mrs. Connelley nor Hurst was present at the accident, and Fredericks, while present on the train which struck the decedent, did not see him struck or before he was struck. The proof as to the accident itself was confined to the re-reading of the testimony of William Rowan, who was the only witness. Thereupon the trial judge gave binding instructions in favor of the defendant. The plaintiff then sued out the present writ. We see nothing in the account of the accident itself, in the surroundings of the accident as testified to by Fredericks, or in the testimony of Hurst in reference to the rules, which changes the aspect of this case from what it was when heretofore before this court, or which leads this court to differ from the views expressed on the merits of the case in its previous opinion. We restrict ourselves, therefore, to restating that part of our former opinion which summarizes such views, viz.:

"It is an obvious fact that many occupations, as for example a powder mill operator, a structural iron worker, a diver, a blaster, a trackwalker, necessarily subject those who follow them to great dangers. When therefore a man contracts for such employment, he knows and takes on himself the risks and dangers incident to such dangerous work. His assumption of those obvious and unavoidable risks is in the very nature of things part of his employment. It follows therefore that the employer violates no legal duty to the employé in failing to protect him from dangers which cannot be escaped by any one doing such work. Narramore v. Cleveland, C., C. & St. L. Ry. Co., 96 Fed. 298, 37 C. C. A. 499, 48 L. R. A. 68.

"It is obvious that, even where a railroad operates its trains and moves its switch drafts in a proper and careful manner, trackwalkers and repairmen are necessarily subjected to great risks. Their very occupation is one of constant peril. Indeed, it follows from the nature of such employment that

the duty of self-preservation has to rest on them, for no adequate protection, other than self-protection, can be afforded them. And such has been the reasonable holding of the law. Thus in Norfolk & W. Ry. Co. v. Gesswine, 144 Fed. 56, 75 C. C. A. 214, it was said: 'This man was one of a number of men who were employed as sectionmen on the railroad. They were engaged in repairing the track, taking out rails, putting in new ones, taking out cross-ties and putting in new ones, and hewing them into proper form and shape, and were working on the railroad track, while the trains were being operated in the usual way; manifestly, a place of danger. A railroad does not suspend the operations of its trains until the track can be put in order, and the proposition to these sectionmen was, "We will run the trains and operate the road as heretofore, as we ordinarily do, and between trains you must do this work and look out for yourselves to avoid being injured by the trains," and the sectionmen accept the employment upon these terms, and if an accident occurs, and they are hurt while the trains are being managed and operated in the usual and ordinary way, they can have no just ground of complaint against the railroad. It is not the fault of the railway company.'

"So, also, in Aerkfetz v. Humphreys, 145 U. S. 418 [12 Sup. Ct. 835, 36 L. Ed. 758], where an experienced trackman was injured by a moving train in a switching yard, it was said: 'Under such circumstances, what negligence can be attributed to the parties in control of the train, or the management of the yard? They could not have moved the train at any slower rate of speed. They were not bound to assume that any employé familiar with the manner of doing business would be wholly indifferent to the going and coming of the cars. There were no strangers whose presence was to be guarded against. The ringing of bells and the sounding of whistles on trains going and coming and switch engines moving forward and backward would have simply tended to confusion. * * * It cannot be that, under these circumstances, the defendants were compelled to send some man in front of the cars for the mere sake of giving notice to employés who had all the time knowledge of what was to be expected. We see in the facts as disclosed no negligence on the part of the defendant.'

"Indeed, in thus making self-protection the substantial safeguard of trackwalkers and sectionmen, the law is reasonable and just, for no other dependable safeguard can be afforded their perilous work in the practical operation of railroads. As said in Keefe v. Railway Co., 92 Iowa, 182 [60 N. W. 503, 54 Am. St. Rep. 542], 'these rules are founded upon the necessities of the business of operating railways,' and in Rosney v. Erie R. Co., 135 Fed. 311 [68 C. C. A. 155]: 'An elaborate system of signals by ringing bells, sounding whistles, swinging lanterns, and waving flags, designed to cover the erratic movements of switching engines and extra freight trains, would quite likely have tended to complicate and confuse the situation.'

"This rule has the uniform support of courts in all sections of the country. Morris v. Boston & M. R. R., 184 Mass. 368 [68 N. E. 680]; Bancroft v. Boston & M. R. R., 67 N. H. 466 [30 Atl. 409]; Railroad Company v. Hester, 64 Tex. 401; Carlson v. Cincinnati, S. & M. R. Co., 120 Mich. 481 [79 N. W. 688]; Pennsylvania R. Co. v. Wachter, 60 Md. 395.

"In view of these decisions, it is clear therefore that, so long as the defendant railroad used its terminal tracks by running its trains properly thereon and in the usual way, the duty of guarding himself against such trains rested on Connelley, and a study of this testimony leads to the sad conclusion that the death of this unfortunate man was due to his own momentary disregard of the peril of his situation. To aid these trackwalkers in taking care of themselves, the railroad required them to go in pairs, and, indeed, Connelley's companion called his attention to the enveloping steam, and advised their moving aside. Obviously self-preservation, the steam-enveloped position he was in, together with the knowledge that trains were constantly moving, should have led the decedent to heed the warning, instead of making chance and not care the insurer of his safety. The failure of decedent to heed this timely warning and step aside undoubtedly cost him his life. The railroad had taken the additional step of placing a brakeman on the switch-

ing train. He was on watch and had the emergency brake ready, but the steam which enveloped Rowan and Connelley until they were struck made it just as impossible for the brakeman to see them as it was for them to see the approaching train."

The judgment below is therefore affirmed.