### LEHIGH VALLEY R. CO. v. DOKTOR.

(Circuit Court of Appeals, Third Circuit. June 28, 1923.)

No. 2987.

1. **Commerce ⬤⟲27(8)—Servant removing spike from switch held engaged in "interstate commerce."**

Even though cars containing an interstate shipment are no longer engaged in interstate commerce after they have reached their destination and are awaiting unloading, or further local movement, plaintiff, who was injured while removing a spike from a switch preliminary to the switching of a draft of 14 cars of coal, was engaged in "interstate commerce," where one car of the 14 had not yet reached its destination.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. **Master and servant ⬤⟲286(31)—Whether track worker could have been given warning is question of fact.**

One engaged in work on a railroad track is not, like a trackworker, so situated that it can be said as matter of law he could not have been given warning of the train's approach, and whether the company owed him the duty of giving warning was a question of fact.

3. **Master and servant ⬤⟲286(31)—Custom to warn by whistle held for jury.**

In an action for injuries to a railroad trackworker, when a draft of cars was switched into the spur track on which he had been working, evidence tending to show an existence of a custom to warn by blowing the locomotive whistle, and to show that the only whistles blown were

⬤⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

coupling signals and signals blown after the accident occurred, *held* sufficient to take to the jury the issue of the custom to blow warning whistles and of its violation.

**4. Master and servant ⊚⊃286(31)—Whether trackman was member of gang entitled to warning held for jury.**

Where it was undisputed that there was a custom that the foremen of a gang of trackworkers should watch for danger and give the workers warning by his whistle, evidence that plaintiff had been sent a little distance from the gang to remove a spike from the switch, but that the gang was spread out along the track for a distance substantially equal to the distance separating plaintiff from it, *held* sufficient to take to the jury the question whether plaintiff was still a member of the gang, entitled to receive warning from the foreman.

**5. Master and servant ⊚⊃206—Trackman assumes risks incident to employment.**

Though the hazards of a trackworker are great, each worker assumes the risk of such hazards as are normally incident to his employment.

**6. Master and servant ⊚⊃213(4)—Trackman does not assume risk of failure to give warning.**

A trackworker may assume that his employer and his agents have exercised such care for his safety as the circumstances will reasonably permit, and where the evidence shows an opportunity and corresponding duty by the master to warn the worker, the employé does not assume the risk of the master's failure to do so.

In Error to the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Action at law by George Doktor against the Lehigh Valley Railroad Company to recover damages for personal injuries. Judgment for plaintiff, and defendant brings error. Affirmed.

Geo. S. Hobart, Edward A. Markley, Chas. W. Broadhurst and Collins & Corbin, all of Jersey City, N. J., for plaintiff in error.

Joseph E. Stricker, of Perth Amboy, N. J., for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. Doktor, an employé of the defendant railroad company, was run over by a draft of cars while at work in the company's freight yard in Perth Amboy, New Jersey. He brought this action for damages under the Federal Employers' Liability Act (35 Stat. 65; 36 Stat. 291 [Comp. St. §§ 8657–8665]) and had a verdict and judgment. The case is here on the defendant's writ of error.

The formal matter which the defendant assigns as error was the court's refusal to grant its motion for binding instructions. The motion was based on several grounds covering substantially the whole case. These grounds are the real questions here for review. We shall discuss them separately. The first was whether there is any evidence which brings the case within the Federal Employers' Liability Act.

The trial court charged the jury, as matter of law, that at the time of the injury the plaintiff was employed and the defendant railroad company was engaged in interstate commerce. Thereby, and to that extent, the court sustained the action under the Act. The defendant contends that, on the testimony, this instruction was error because, at most, the question was one of fact for the jury.

Doktor was removing a spike from a switch preliminary to the movement of a draft of fourteen cars laden with coal. As an article

---

⊚⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of commerce the coal had its origin in Pennsylvania and was consigned, as the defendant contends, to the shippers at Perth Amboy, New Jersey, there to await reconsignment orders and reshipment, either by rail or water. On this testimony the defendant maintains that the coal had arrived at its destination and, therefore, under Kozimko v. Hines (C. C. A.) 268 Fed. 507, 508, and Schauffele v. Director General (C. C. A.) 276 Fed. 115 it had lost the character of interstate commerce; and so also had the cars as instrumentalities of interstate commerce. In the cited cases we followed C., B. & Q. R. Co. v. Harrington, 241 U. S. 177, 36 Sup. Ct. 517, 60 L. Ed. 941, and Lehigh Valley R. Co. v. Barlow, 244 U. S. 183, 37 Sup. Ct. 513, 61 L. Ed. 1070, and held that when cars, at one time engaged in interstate commerce arrive at their destination, they lose the character of interstate commerce; and that, when injuries occur in later movements which are purely local, recovery cannot be had under the Federal Employers' Liability Act.

[1] And such, on first view, was the character of the coal and cars in question, for on arriving at Perth Amboy, the point of consignment, it would seem they had reached their destination and had passed out of interstate commerce. If these were all the facts in the case we should feel called upon to discuss the question of destination as influenced by contemplated further movements, argued at length in the briefs. But discussion of this question can be avoided and the point decided on the fact that of the fourteen cars there was one consigned, not to Perth Amboy, but to Perth Amboy Piers, a place a mile or more beyond. Obviously this car with its load of coal had not arrived at its destination when the plaintiff was hurt. It was still in interstate commerce. Its movement at the time of the plaintiff's injury was not local. It had yet to be delivered to the point named in the waybill. That point was its destination. After the accident the car was moved to Perth Amboy Piers and its coal was loaded on scows and consigned to New York.

On these facts we are of opinion that even if but one car of the draft was in interstate commerce, the court committed no error in instructing the jury as matter of law that the plaintiff in preparing for switching the draft and the defendant in moving the draft were engaged in interstate commerce. Davis v. Dowling (C. C. A.) 284 Fed. 670.

The next two grounds of the defendant's motion for a directed verdict were that negligence on the part of the defendant had not been proved and that the accident was due solely to the contributory negligence of the plaintiff.

Doktor was a member of a track gang repairing a spur track cut off from traffic by a spiked switch. Trainmen desired to move a draft of cars from another track to this track. To permit this to be done, Doktor went to the switch to remove the spike. While doing so the train came upon him and inflicted serious injuries. This suit followed. In his complaint the plaintiff averred that the defendant owed him the duty of warning him of the approach of the draft and charged that the defendant had violated this duty by failing to give him warning by bell or whistle from the locomotive or by whistle from the gang foreman. At the trial the plaintiff, in support of his averment of duty, testified there was a yard custom in such cases to give warning by

whistle of the locomotive and he produced six witnesses whose testimony, though varying in strength, could be regarded as sustaining this contention. He also introduced evidence that in a track gang the workmen work and the foreman watches and on the approach of danger the foreman warns the gang by a whistle which he carries for that purpose.

The evidence of the defendant's custom and therefore of its duty to warn trackmen by locomotive whistle was sharply controverted; but the custom and the corresponding duty to give warning by whistle of the foreman was admitted by the defendant, with the explanation, however, that it extends only to men immediately within the gang and not to one who has gone away to perform a separate task, and that in such event the custom is for the man to look out for himself.

[2] This case raises no new question of law. It is distinguished from Aerkfetz v. Humphreys, 145 U. S. 418, 12 Sup. Ct. 835, 36 L. Ed. 758, and Connelley v. Pennsylvania R. Co., 228 Fed. 322, 142 C. C. A. 614, in that the injured workmen in those cases were trackwalkers, who, from the very nature of their work, were required to look out for themselves, while here the injured man was a trackworker, who, from the very nature of gang work, could not look out for himself when so employed. Nor does this case fall within the class where there is neither a custom of giving warning nor a way of giving warning in freight yards as decided in Hines, Director General, v. Jasko (C. C. A.) 266 Fed. 336. Rather it comes within the law of those cases where a warning of some kind is possible and where it is customary to give it as in Hines, Director General, v. Knehr (C. C. A.) 266 Fed. 340, 341; Erie R. Co. v. Healy (C. C. A.) 266 Fed. 342, 343; Director General v. Templin (C. C. A.) 268 Fed. 483, 484, Certiorari denied, 254 U. S. 656, 41 Sup. Ct. 218, 65 L. Ed. 460. Therefore the question of the existence of the two customs of warning, and of the defendant's corresponding duty, was a question of fact properly submitted to the jury—if the evidence was sufficient to sustain a finding.

[3] Turning to the record, we have observed on the custom of warning by locomotive whistle that the plaintiff's testimony was sharply controverted, yet the defendant impliedly confirmed the custom by defending on the ground that it gave the requisite warning. On this point its testimony is to the effect that the locomotive blew six or more whistles, yet when these whistles are analyzed it appears that the first two were in answer to a coupling signal and were therefore in no sense warning whistles; and the last four—three sharp short ones and one long one—were made at about the time the draft struck Doktor and were of a character to indicate that an accident had happened and the train must be stopped. This clearly left open the question whether these whistles were given before or after Doktor was hit and, accordingly, whether they were alarm whistles or warning whistles.

We are of opinion that the evidence was sufficient to submit the issue and to sustain the finding.

[4] On the issue of the failure of the foreman of the gang to warn Doktor of the approach of the draft there is here no question about the rule. The question is one of its application and turns on the question of fact whether Doktor was working within or beyond the track

gang. If within, he was required to work, not to watch, and he had a right to rely upon the foreman for a warning; if beyond, he was required both to work and watch. The expression "track gang" must be considered cautiously. It does not always mean that the members of the gang are working in a compact body, close together and in close contact with the watching foreman. It means that, as in this instance, the gang may be spread some distance along the track. Here there were ten or a dozen men in the gang. A number testified at the trial. Each gave the distance of his position from that of the plaintiff at the spur switch. These distances varied from three hundred feet to nine hundred and sixty feet. We think the latter figure extreme. But the testimony must have shown to the jury quite conclusively that the gang was spread along the track for a distance of from three hundred feet to five hundred and fifty feet from the plaintiff at the switch, thus proving that the main body of the gang was operating over a space of at least two hundred and fifty feet. Admittedly, everyone of the gang within that space was under the protection of the foreman and had a right to expect notice of danger by the sounding of his whistle. This span of two hundred and fifty feet was only fifty feet shorter than the space from one end of the gang to the spur switch where Doktor was removing the spike. If the men in the gang, spread over at least two hundred and fifty feet were entitled to warning by the foreman's whistle and could hear it when sounded, it was a fair question to submit to the jury whether the plaintiff, working in the other direction but fifty feet farther away, was working alone and beyond the protection of the foreman or was working within the gang and therefore within the protection of the foreman and his whistle. In this state of the evidence, we are of opinion that the issues of negligence and contributory negligence were properly submitted to the jury.

The next ground of the defendant's motion for a directed verdict was that the evidence is so overwhelmingly in its favor that a verdict to the contrary must be set aside. While, of course, we recognize the rule here invoked, as declared in Union P. R. Co. v. McDonald, 152 U. S. 262, 283, 14 Sup. Ct. 619, 38 L. Ed. 434, and in Southern Pac. R. Co. v. Pool, 160 U. S. 438, 16 Sup. Ct. 338, 40 L. Ed. 485, 487, our previous rulings indicate its inapplicability.

The remaining ground was that the plaintiff assumed the risk of the injury which he received.

[5, 6] The hazards of a trackworker, like those of a trackwalker, are great; yet, great as they are, each workman assumes the risk of such as are normally incident to his employment. Connelley v. Pennsylvania R. Co., 228 Fed. 322, 142 C. C. A. 614; Aerkfetz v. Humphreys, 145 U. S. 418, 12 Sup. Ct. 835, 36 L. Ed. 758. But the employé may assume that his employer and his agents have exercised for his safety such care as the circumstances will reasonably admit. Smith v. Payne, Director General (C. C. A.) 269 Fed. 1, 4. In most cases in freight yards this is very little; in some cases none at all. Yet, if the circumstances, as under the evidence in this case, include the opportunity and the corresponding duty of the employer to give warning, and if he fail in the performance of that duty, the employé does not assume the risks arising from the employer's negligence.

The judgment below must be affirmed.