State ex rel. Ambrose v. Trimble.

Parties.

---

THE STATE ex rel. MARY AMBROSE, Administratrix of Estate of JAMES AMBROSE, v. FRANCIS H. TRIMBLE et al., Judges of Kansas City Court of Appeals, and CHICAGO & ALTON RAILROAD COMPANY.

In Banc, July 3, 1924.

1. **NEGLIGENCE: Contributory in Mitigation of Damages: Contradictory Instructions: Federal Act.** In an action for personal injuries based on the Federal Employers' Liability Act, an instruction telling the jury that, if they found certain necessary facts, they should assess the damages of deceased's mother at such sum as would reasonably compensate her for the loss of pecuniary benefits which the jury should find from the evidence she would certainly have received from him, and an instruction telling the jury that if they found that deceased's mother "was damaged by his death a full recovery should not be had for such damages, but only a proportional amount thereof bearing the same relation or ratio to the full amount of damages she has sustained as the negligence, if any, attributable to the defendant bears to the negligence attributable to both deceased and defendant," are not contradictory, and the Court of Appeals in holding them to be contradictory and reversible error contravened many decisions of the Supreme Court; and the rule is the same, whether both propositions were embodied in one instruction, or in two instructions separately numbered.

State ex rel. Ambrose v. Trimble.

*Held,* by JAMES T. BLAIR, J., with whom GRAVES, C. J., and WALKER, J., concur, that the two instructions declare a different measure of damages and are contradictory and reversible error.

2. ⸻: ⸻: ⸻: **Pleading.** It is not necessary for plaintiff, in his action based on the Federal Employers' Liability Act, to negative contributory negligence. He states a complete case when he alleges a certain negligent act of defendant caused the injury, and if defendant relies upon contributory negligence to diminish the damages he must plead it, unless contributory negligence appears in plaintiff's evidence in making out his case. And where defendant has pleaded contributory negligence, two instructions for plaintiff, one telling them if they find certain facts they should assess the damages of deceased's mother at such a sum as will reasonably compensate her for the loss of pecuniary benefits, and the other that, if they find the mother was damaged and that contributory negligence can be attributed to deceased, her damages may be diminished by the amount of such negligence, are not contradictory; and they are no more contradictory because of the fact that the two propositions were embodied in separate instructions than they would be if both were in one instruction.

3. **CERTIORARI: To Court of Appeals: Defendant as Respondent.** The defendant railroad company, against which judgment was returned in the trial court and which appealed to the Court of Appeals, where the judgment was reversed, if made a respondent to the writ of *certiorari* directed to that court, may ask that the opinion and judgment of that court be quashed because in conflict with the previous decisions of the Supreme Court.

4. **NEGLIGENCE: Anticipating Peril: Trackwalker: Unusual Duty.** An employee of a railroad whose regular duties do not require him to be on the track, nor to take note of the time and operation of trains, for instance, if he is a cement worker and is sent by the foreman to fill a signal lamp upon a bridge, and as he proceeds along a track which pedestrians habitually travel, is struck by a train at a place where to look is for the trainmen to see his peril in ample time to avoid hitting him, is entitled to recover under the humanitarian doctrine, whether or not he is seen, and the single fact that he is an employee does not excuse the company for its failure to discover his peril. A mere cement worker usually employed in the reconstruction of the foundation of a railroad bridge cannot be classed as a trackwalker or as a section hand, and if sent to fill with oil a signal lamp placed upon the bridge, filled once in two days and kept constantly burning as a "slow-up order" to trains, and in performing the usual duty he walks upon that part of the track customarily used by the public, the same duty

to move out of the way of approaching trains is not imposed upon him that the law imposes upon trackwalkers or section hands at work upon such part of the track, but the duty rests upon the trainmen to use ordinary care to discover his peril, and the company cannot be excused for killing him on the sole ground that they did not see him, when to look was to see. Under such circumstances the trainmen did not have the right, as to such cement worker, to anticipate a clear track.

Headnote 1:  Damages, 17 C. J. sec. 376.  Headnote 2:  Master and Servant, 26 Cyc. 1402 to 1404;  Damages, 17 C. J. sec. 376.  Headnote 3:  Courts, 15 C. J. sec. 518.  Headnote 4:  Master and Servant, 26 Cyc. 1267 (1926 Anno).

## *Certiorari.*

JUDGMENT QUASHED IN PART.

*J. V. Jones, H. R. Freeman* and *T. J. Madden* for relatrix.

The decision and judgment of the Court of Appeals, holding that plaintiff's Instruction 3 was erroneous in failing to provide for the reduction of damages due to the contributory negligence of the deceased and that it was contradictory to plaintiff's Instruction 2, which supplied that provision, should be quashed, for the reason that said decision in that respect is in conflict with the last previous decisions of this court in McIntyre v. Railway Co., 286 Mo. 234, 240, 260, and Crecelius v. Railway Co., 284 Mo. 26, 43, which decisions correctly declare the rule of the Federal courts.  Louisville & N. Railroad Co. v. Hollaway, 246 U. S. 525; Norfolk & W. Railroad Co. v. Earnest, 229 U. S. 114.

*Alpha N. Brown* and *Charles M. Miller* for respondent Railroad Company.

(1)  The ruling and holding of the Court of Appeals to the effect that relatrix made a case for a jury on the last clear chance doctrine is in conflict and contravenes the last previous decisions of this court, and under the last previous decisions of this court this case should have been reversed outright by the Kansas City Court of

Appeals. The railroad has the right to expect a clear track as to employees. Degonia v. Railroad, 244 Mo. 564; Evans v. Wabash, 178 Mo. 508. (2) The Court of Appeals, in holding that it was the duty of the fireman and brakeman to keep a lookout ahead on the fireman's side of the engine, contravened and conflicted with the last previous decision of this court in McGee v. Wabash, 214 Mo. 542.

WHITE, J.—*Certiorari* to the Kansas City Court of Appeals. The relatrix, Mary Ambrose, as administratrix of the estate of James Ambrose, deceased, recovered judgment in the Circuit Court of Jackson County, Missouri, in the sum of $7500, against the Chicago & Alton Railroad Company, on account of the death of James' Ambrose, who was unmarried and living with his dependent widowed mother, Margaret Ambrose. Ambrose was killed in Saline County. The suit was brought under the Federal Employers' Liability Act.

On appeal to the Kansas City Court of Appeals the judgment was reversed and the cause remanded. The relatrix, in her petition for the writ, asserts that the opinion of the Kansas City Court of Appeals is contrary to certain rulings of this court in holding erroneous certain instructions given by the trial court.

Respondent Chicago & Alton Railroad Company claims that the ruling of the Kansas City Court of Appeals was contrary to certain rulings of this court in holding that a case was made out for the jury on the evidence presented, and asks this court to quash the record on that account.

I. We will first consider the alleged conflict urged by relatrix. The trial court, by instruction number three, on the measure of damages, told the jury that if they found certain facts, required in order to render a verdict for plaintiff, they should assess her damages at such sum as would reasonably compensate for the loss of pecuniary benefits which the

Instructions.

jury should find from the evidence the mother, Margaret Ambrose, would certainly have received from the deceased, taking into account her life expectancy.

Instruction number two, given on behalf of plaintiff, requires the jury to make a similar finding in regard to the facts necessary for a verdict, and then told the jury:

"If you find that Margaret Ambrose was damaged by his death a full recovery should not be had for such damages, but only a proportional amount thereof bearing the same relation or ratio to the full amount of damages she has sustained as the negligence, if any, attributable to the defendant bears to the entire negligence attributable to both deceased and defendant."

The Court of Appeals held that those instructions were contradictory and reversed the case on that account. This, it is claimed by the relatrix, is contrary to certain rulings of this court. [State ex rel. Jenkins v Trimble, 291 Mo. l. c. 234; McIntyre v. Railroad, 286 Mo. l. c. 260; Colburn v. Krenning, 220 S. W. 934, l. c. 940; Gordon v. Burris, 153 Mo. l. c. 232.] It was held by this court in Colburn v. Krenning, that in a personal injury case, if an instruction authorizing a recovery is sufficient, aside from the question of contributory negligence, and if an instruction for defendant properly declaring the law with respect to contributory negligence is given, the two instructions thus given shall be sufficient. It was said by this court in the Jenkins Case, 291 Mo. page 234:

"Where plaintiff's instruction omits some feature which is not an element of his cause of action, but is merely a defensive feature, the omission may be cured by the instructions for defendant submitting that feature."

The Colburn Case was rendered by Division Number Two, and the Jenkins Case by Court in Banc.

The general principle was announced in McIntyre v. Railroad, 286 Mo. l. c. 260, a case arising under the Federal Employers' Liability Act, and applied to the defense of contributory negligence. Contributory negli-

gence in such a case is a defense *pro tanto,* and in this case was pleaded as such. The opinion of the Kansas City Court of Appeals says: "The answer is general and pleads contributory negligence and assumed risk." It is not necessary for the plaintiff in his suit under the Federal Employers' Liability Act to negative contributory negligence. In order to recover he states a complete case when he alleges the negligent act of the defendant which caused the injury. If the defendant relies upon the contributory negligence to diminish the amount of damages it must be pleaded, unless contributory negligence appears in the plaintiff's evidence in making out his case. If the defendant should instruct on the evidence from the plaintiff's witnesses, tending to show contributory negligence, it would come within the rule announced in cases cited.

Cases cited by the Railroad Company, such as State ex rel. v. Ellison, 272 Mo. l. c. 583, are where the instruction omits some hypothetical fact which must be found in favor of plaintiff before he could recover. And where such an instruction is given, purporting to cover the whole case, the error is not cured by instruction given for the defendant. They are not in point.

The respondent claims that the McIntyre Case, and other cases cited above, are not in point because the omission in the plaintiff's instruction was presented in the defendant's instruction, whereas in the present case it is not presented in the defendant's instruction, but in an instruction given for the plaintiff; therefore, the error is not cured. This argument defeats itself, because the two instructions given for the plaintiff not only required a finding of every fact necessary to entitle plaintiff to recover, but required a consideration of the defense of contributory negligence in determining the amount of the verdict, in case of a verdict for plaintiff. The two instructions were numbered two and three. The complaint now is that those instructions were contradictory, whereas if the matter of both instructions had

been embodied in one instruction it would have been correct. If they are contradictory when separated by a numeral—distinguished by two numerals—then, if both were included in one, it would be contradictory of itself. What would be the difference in effect upon the jury if the two instructions were put in one paragraph instead of in two, and designated by one number instead of by two numbers where they thus come consecutively? If the two paragraphs together had been numbered either two, or three, the respondent would have made no complaint, but since they happen to be numbered two *and* three, they are contradictory. To state the proposition is to refute it.

Further, Instruction 3 does not authorize a verdict. The two instructions taken together define, somewhat awkwardly but correctly, the duty of the jury. It must first ascertain how much the plaintiff is damaged, and then deduct from the sum found an amount in the proportion that the negligence of the deceased contributed to the death. If the first is not found there would be no basis whereon to make the deduction. Instruction 3, instead of authorizing a verdict, only directs the jury what it must take into consideration in assessing her damages. There can be no complaint that the direction in that respect is not correct. The jury must consider all those elements and assess the damages accordingly. It is a strained construction to say they must then and there fix the amount of the verdict without considering anything else. One of the meanings of "assess" given in Webster and in Bouvier is, "to value," "to fix the value of." If the words "you may ascertain as damages" were used instead of "you may assess as damages," there would be no complaint. If microscopic inaccuracies like that complained of should work a reversal in every case, no case could be affirmed.

The ruling of the Kansas City Court of Appeals, therefore, was in conflict with the cases first cited above.

II.   The respondent Railroad Company asserts here that the opinion and judgment of the Kansas City Court of Appeals should be quashed because it is in conflict with the ruling of this court.   Although a respondent in this proceeding, it may properly raise the question of conflict.   [State ex rel. Shawhan v. Elliott, 273 Mo. 218.]   The argument is that Ambrose was killed while performing a duty in connection with the operation of trains; that it was his duty to know when trains were coming and to look out for them, so that it was not necessary for trainmen to be on their guard to discover whether or not he was on the track.   The case was submitted on the humanitarian rule.   The trial court refused an instruction asked by defendant, which denied recovery unless Ambrose actually was seen in time to have stopped, or to have checked the speed of the train, and so avoided hitting him.   Recovery was permitted if the defendant's employee *could have seen* him, by the exercise of ordinary care, in time to have avoided the injury.   The Court of Appeals thus presents the facts in regard to that issue:

*Anticipating Peril.*

"There was testimony in detail tending to show that the public had been using the track in going to and from Marshall, at the place where the accident occurred, and that this practice had existed for a period of eighteen or twenty years.   We think this testimony sufficiently substantial to take the case to the jury on the question of user.   User, however, goes only to the question of the duty of defendant to watch for persons who might be on the track at this point.   We think this testimony, in connection with that offered to the effect that just east of the bridge over the Missouri Pacific track was a private crossing on a farm owned by a Mr. Carpenter, is sufficient to negative the presumption that the engine crew had a right to anticipate a clear track.   The testimony further was to the effect that persons walked upon this portion of the track more in summer than in winter.

"But it is urged by defendant that it owed deceased a less degree of care in this respect than it owed the general public in that deceased was an employee of defendant, and was sent by his foreman to see that a signal lamp was in proper condition and to fill said lamp; that he knew trains might pass over the track at any time, and that the mission he was sent to perform had to do with the movements of trains from the signal to the bridge at Salt Fork Creek, at which the concrete work was being done. It is insisted that the law did not require the operatives of the freight train to keep a lookout for deceased, but that it was the duty of deceased to look and listen for approaching trains, and failing in this, there can be no recovery.

"The testimony of the train crew is to the effect that they recognized it as their duty to look down the track for persons who might be thereon. The fireman testified he was looking down the track towards the crossing bridge until the train was within a quarter of a mile of it, and that he then turned his attention to his duty of shoveling coal into the fire-box. The engineer testified also that he was 'looking ahead for danger,' that he was 'looking for anyone that might be up there, any pedestrian who might be walking along there.'

"The testimony is undisputed that no warning was given of the approach of the train. The engineer also testified he did not see deceased because of the curve in the track at the bridge. The fireman stated he did not see deceased because, at that time, he was engaged in shoveling coal. The brakeman explained his failure to see deceased by stating that, at the time, he was looking backwards, observing the train until a few moments before the collision. This testimony tends to show only that the fireman and brakeman did not look when 'to look was to see,' and that while the engineer was looking he did not see deceased in a position of imminent peril, and oblivious to his danger."

The court then makes this comment upon the Federal case:

"It was held, in effect, in Connelly v Penn. Railroad Co., 228 Fed. 322, that a railroad company which operates trains in a proper and customary manner is not chargeable with negligence which renders it liable for the killing, by any of such trains, of a trackwalker who assumes the risk from such danger as necessarily is incident to his employment. This case, cited by defendant, falls somewhat short of applicability to the facts before us. Here the testimony shows that deceased was not employed as a trackwalker, but as a cement worker; that the duty of lighting the lamp on the signal board was not any part of his regular duty, and not connected therewith. The testimony shows that in the period of his employment at the bridge abutment, a period of approximately thirty days, he was assigned to the task of filling the lamp only on two or three previous occasions."

The Railroad Company claims this ruling is in conflict with certain cases affecting track repairers, section men, and employees whose duty compels them to work along and upon the tracks where they know trains are operated, and they are, therefore, expected to look out for themselves. [Gahal v. Railroad, 251 Mo. 1. c. 267; Van Dyke v. Railroad, 230 Mo. 1. c. 282-283; Evans v. Wabash Ry. Co., 178 Mo. 508; State ex rel. v. Ellison, 271 Mo. 1. c. 474; Degonia v. Railroad, 224 Mo. 564.]

In all those cases the employee who was injured had duties connected with the railroad track or with something on the track, or with the immediate operation of trains. They were trackwalkers, car repairers, switchmen, etc. In such cases the servants operating the trains had reason to expect that trackwalkers and the like not only knew what trains were operating, but would step out of danger when a train approached.

Another line of cases holds that if an employee, whose regular duties do not require him to be on the track, nor to take note of the time and operation of trains, is struck and injured where such incidental duty

calls him, then the rule just mentioned does not apply. Under the humanitarian rule he may recover if operators of trains by the exercise of ordinary care might have discovered his danger in time to have avoided striking him.    The cases turn upon whether the circumstances were such as made it the duty of those operating the trains to look out for persons ahead, or whether they had a right to expect a clear track.    [Crecelius v. Railroad, 223 S. W. 413, 1, c. 417; Tetwiler v. Railroad, 242 Mo. 178; Kippenbrock v. Railroad, 270 Mo. 1. c. 484-485; Greenwell v. Railroad, 224 S. W. 1. c. 407; Rigley v. Pryor, 290 Mo. 1. c. 18-19.]

It is contended by the Railroad Company here that Ambrose was a cement worker, therefore he was working on the track; that he was in the same position as the track worker, or a section hand working on the track, and knew he must move off when trains came along. There is no similarity in the duties.    The work Ambrose was doing was underneath the bridge.    In his regular work he had no reason to take note of trains.    There appears no evidence to show that a cement worker ever worked where he had to take note of trains.    It would seem in the very nature of the case that when he was doing cement work trains could not come over the work on which he was employed.    It was no more necessary for him to observe the moving of trains and keep out of the way than for any other worker on an unfinished track where trains did not move.

Ambrose was killed while coming across the bridge to fill a signal lamp.    It is argued that the signal lamp was to direct the operation of trains, and therefore he was bound to take note of the operation of trains and must be familiar with the time of their coming.    Just the contrary appears from the evidence.    The Court of Appeals in speaking of the lamp, said:    "The purpose of this signal was a 'slow-up order' for trains at the bridge where the work was being done.    *The lamp was filled*

*with oil every alternate day and was burning continuously."* (Italics ours).

Thus, while the cement workers were working underneath the bridge, it was desired that trains pass over the bridge slowly. The lamp was kept burning continually; it did not matter when it was filled, for it lasted two days. This point was argued as if it were necessary for Ambrose, or some one of the bridge gang, to go out on the bridge and signal each train when it came along. The fact that the lamp was burning continually shows there was no such duty. It made no difference what time the trains came; it was no more necessary for the persons who filled the lamp and lighted it to know when trains approached than it was necessary for someone who might be working on the foundation for a station house opposite the track to know when the trains were coming. For the cement worker, working underneath the bridge, it was a matter of indifference when the trains passed. The trains were slowed up because, inferentially, the structure was weakened while undergoing repairs. Once or twice previously Ambrose had been sent by his foreman to fill the lamp. There was nothing in the nature of his regular employment and nothing in this incidental employment which put him in the class with workers on the sections, track workers, and switchmen in the yards who must know of the way trains are running. His duty brought him within the rule announced in the Crecelius Case, and in the Greenwell and other cases of like import.

Accordingly, so far as the record and opinion of the Kansas City Court of Appeals holds there is conflict in instructions on the measure of damages, it is quashed; but in no other respect. *Woodson, Ragland* and *David E. Blair, JJ.,* concur; *James T. Blair, J.,* dissents in separate opinion in which *Graves, C. J.,* and *Walker, J.,* concur.

JAMES T. BLAIR, J. (dissenting).—In the action of Ambrose v. C. & A. Railroad Co., the trial court gave one instruction for plaintiff which reads as follows:

"3-P."

"The court instructs the jury that if you find a verdict for the plaintiff and further believe and find from the evidence that the mother of the deceased, Margaret Ambrose, was dependent upon him for support and that she had been receiving such support from him and that she sustained pecuniary loss by reason of his death, then you may in assessing the damages (if any) take into consideration the age, occupation, condition of health, habits and earning capacity (if any) and the reasonable expectancy of the deceased as you find has been shown by the evidence and you may assess as damages (if any) such sum as will be reasonable compensation for the loss of such pecuniary benefits as you find from the evidence the mother, Margaret Ambrose, would in all reasonable certainty have received from the deceased, also taking into account the age and the life expectancy of the mother, as you find to be shown by the evidence."

The court also gave another instruction for plaintiff which reads thus:

"2-P."

"The court instructs the jury that if you believe from the evidence that the defendant railroad company was engaged in commerce between states and that said Ambrose was engaged in its service in carrying on said commerce, as defined in these instructions, then his negligence in failing to look for or avoid the train that killed him does not constitute a defense to defendant's negligence, if you find it was negligent as defined in these instructions, but only goes to the reduction of damages; and if you find that Margaret Ambrose was damaged by his death a full recovery should not be had for such damages but only a proportional amount thereof bearing the same relation or ratio to the full amount of damages she sustained as the negligence, if any, attributable

304 Mo.—35.

to the defendant bears to the entire negligence attributable to both deceased and defendant.''

The Court of Appeals held these instructions were in conflict (and that "3-P" was wrong), and reversed the judgment and remanded the cause. Relator sued out a writ of *certiorari* to quash the record on the ground that this holding is in conflict with controlling decisions of this court. The majority opinion holds there was no conflict in the instructions and that the holding of the Court of Appeals to the contrary is in conflict with decisions of this court.

The instructions concede the presence in the action for damages of the issue of contributory negligence. In fact, instruction "2-P" concedes the existence of contributory negligence. In view of decedent's contributory negligence plaintiff was not entitled to recover full compensation for her loss. By the act under which she sued she was entitled to recover such part of full compensation as would be commensurate with the negligence of the railroad when compared with the sum of the negligence of the railroad *and* deceased. This is not denied in this case. In the face of this conceded rule instruction "3-P" unequivocally tells the jury they may assess damages in "such sum as will be reasonable compensation for the loss of such pecuniary benefits as you find from the evidence the mother, Margaret Ambrose, would in all reasonable certainty have received from the deceased.'' The other qualifications in the instruction do not affect the present question. This instruction covers the whole matter and plainly tells the jury they can include in the assessment of damages plaintiff's *whole loss* on account of her son's death. This authorized an assessment against the railroad of damages which the statute under which the action was brought *did not permit to be assessed against it;* to-wit, a part of the whole damages which bore the proportion to the whole that the conceded contributory negligence of deceased bore to the whole negligence made up of his contributory negligence

and the railroad's negligence. The instruction is in'conflict with the statute and is erroneous on the facts to which it applied.

The majority opinion seems to advance as the reasons for its ruling that the holding of the Court of Appeals on this question is in conflict with decisions of this Court: (1) that it is, at times, held here that a plaintiff's instructions may authorize a verdict for him without taking thought of affirmative defenses, as in certain cases cited, and (2) that instruction "2-P" cured the error in instruction "3-P," "if any." With respect to the first of these the argument in a measure seems to proceed on the theory that the fact that contributory negligence is not a part of a plaintiff's case but is a defense, authorized the giving of instruction "3-P," or, at any rate, renders it curable by an independent instruction. In that instruction the jury were told what damages the law authorized them to allow. It was complete in itself and purported to state the proper basis of assessment of damages. It clearly directed the jury that they could allow for *all* of plaintiff's loss, and thereby authorized them to allow for the part of the loss attributable, under the statute, to the negligence of the deceased. In short, the instruction *expressly authorized* a finding of damages for an element of loss for which the statute *expressly denied* a recovery. This cannot be justified by sound logic. The instruction tells the jury that a thing *is* the law which, precisely and by statute, *is not* the law.

Further, the cases which seem to permit a plaintiff, in his instructions, to exclude the defense of contributory negligence (and others) from consideration by the jury announce a rule which seems obviously erroneous and one broad enough to include instruction "3-P" but one which has not yet been applied to hold correct a direction to a jury to allow damages which the law forbids them to allow. There are decisions which hold that an instruction like "3-P" is cured by one like "2-P." [Mc-

Intyre v. Railway, 286 Mo. l. c. 260.]  This case was decided January 10, 1921.  The same Division in Jaquith v. Plumb, 254 S. W. l. c. 93 (July 14, 1923) unanimously held that:  "The instruction purported to cover the whole case and directed a verdict for the plaintiff without requiring the jury to pass upon the plea of contributory negligence.  This error was not cured by giving another instruction submitting that issue to the jury."  Cases are cited.  The same principle was applied in State v. Slusher, 256 S. W. l. c. 819.  This rejects the rule which includes that upon which the present majority opinion is founded.  On the question in this case one Court of Appeals has held that this court now permits instructions which exclude all affirmative defenses.  In that case the action was upon a policy of insurance.  There was a defense, and evidence to support it, that the policy had been violated with respect to keeping gasoline in the insured railroad car.  There was no contention such a violation would not defeat the action.  The jury were instructed that if plaintiff owned the car and it was insured in defendant company at the time of loss, the verdict should be for plaintiff.  The Court of Appeals reluctantly followed decisions of this court which (1) justify such an instruction, and (2) others which hold they are cured by defendant's instructions, and affirmed the judgment.  That case is pending here on *certiorari.*  In it some decisions were followed and that interposes a difficulty.  In the instant case, however, the Kansas City Court of Appeals did *not* follow these decisions.  We have the power on this record, since the Court of Appeals has not followed these late decisions, to overrule them if they are wrong and let the ruling of the Court of Appeals stand.  This has long been the rule in *certiorari.*  This court should take this course in this case and re-establish the rule which condemns misdirection of juries and conflicting instructions.

The re-arrangement of the paragraphing and numbering of the instructions in question would not change

the situation. *Misdirection* is error whatever form it takes and whatever the sequence is and whether or not there is given a sound instruction with which it conflicts. *Graves, C. J.,* and *Walker, J.,* concur: