## VOORHEES v. CENTRAL R. CO. OF NEW JERSEY.

(Circuit Court of Appeals, Third Circuit. September 10, 1926.)

No. 3448.

1. **Master and servant ⬠286(31)—Negligence of engineer in failing to see section man and give warning held question for jury.**

 Conflicting evidence as to whether engineer of train which struck and killed section man was negligent in failing to see deceased and give warning *held* to make question for the jury, and direction of verdict for defendant was error.

2. **Negligence ⬠136(31)—Case is for jury, when evidence as to injury to railroad employee tends to show negligence of both parties (Employers' Liability Act, § 3 [Comp. St. § 8659]).**

 In action for the death of an employee, killed on the track, where there is evidence tending to show that both deceased and defendant were negligent, the case is one for the jury, as deceased's negligence merely diminishes the recovery under Employers' Liability Act, § 3 (Comp. St. § 8659).

3. **Master and servant ⬠226(2)—Employee assumes risks caused by employer's negligence only when known or obvious.**

 An employee assumes risks caused by his employer's negligence only when they are fully known by him, or are obvious and such as would, under the circumstances, be seen and appreciated by an ordinarily prudent person.

In Error to the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Action at law by Orellia Voorhees, administratrix of the estate of Cornelius T. Voorhees, deceased, against the Central Railroad Company of New Jersey. Judgment for defendant, and plaintiff brings error. Reversed, and venire facias de novo awarded.

Ralph W. Botham and C. A. Ludlow, both of New York City, for plaintiff in error.

William A. Barkalow, of New York City (De Voe Tomlinson, of New York City, of counsel), for defendant in error.

Before BUFFINGTON and DAVIS, Circuit Judges, and RELLSTAB, District Judge.

DAVIS, Circuit Judge. This was an action brought by the plaintiff in error against

the Central Railroad Company of New Jersey to recover damages for the death of her intestate husband, Cornelius T. Voorhees. At the close of the evidence the trial judge directed a verdict for the defendant company, and the plaintiff brought the case here on writ of error.

Voorhees was employed by the defendant as "a section man at Whitehouse Station, N. J., under a foreman, George Apgar, and his duties were to keep the ashes off tracks 3 and 4, provide a dump for them, and clean up around the water plug, and so forth." He was working at what is known as No. 1 water column, called a water plug or standpipe. This is about one mile east of the station. At this point the defendant has four tracks, numbered 1, 2, 3, and 4. The east-bound tracks are numbered 1 and 3, and the west-bound tracks 2 and 4. No. 1 is a through east-bound track, and No. 2 is a through west-bound track. The deceased was killed by a wrecking train on track No. 3 on its way from Whitehouse Station to County Line, a mile or two away, "to pick up a couple of cars." This track is the most southerly one, and the standpipe is located between it and track No. 1, which is the track next to it on the northerly side. The distance between these two tracks at this point is 13 feet 6½ inches. The standpipe is located between these tracks, and rises out of a concrete base 8½ feet long, 6 feet 2 inches wide, and 2 feet 2 inches high. At the top of the base the standpipe is 3 feet in diameter, but is reduced to 1 foot some distance above the base. The record does not contain a statement of its height, but it is high enough so that water will run from it over the top of the engine tanks, which are about 10 feet above the rails of the track.

While the engines are taking in water, engineers remove from them clinkers, and some of them fall on the side of the tracks and behind the base of the standpipe. The deceased had built a fire near the standpipe on the day in question, and was "cleaning up" around it. There is a dumping ground right opposite to the place where the deceased was struck. He stepped out from behind the water plug or standpipe, and "had one leg across the rail" on his way across the tracks to the dump, when he was struck and killed.

[1] At the time of this accident John J. Gainey, a witness produced by the defendant company, was the head brakeman of the wrecking train that killed Voorhees. When the train left Whitehouse Station, he went up into the cab of the engine, and instead of sitting down in a vacant seat on the fireman's side of the cab, or standing at or near the side of the engineer, he seems to have stood directly back of the engineer, who turned around and was looking at him at the time of the accident, or directly in front of him, thus cutting off his vision, so that he could not see the deceased in front of his engine, and did not know that he had attempted to cross the tracks until Gainey "hollered."

In cross-examination, after stating that he entered the cab at Whitehouse, he testified as follows:

"Q. And when you were talking to the engineer, he turned and looked at you, didn't he? A. Yes, sir.

"Q. You did not turn to his back, did you? A. No, sir.

"Q. He turned round and looked at you. Then, when he turned round and looked at you, his back was towards the front of his engine, wasn't it? A. Yes, sir."

According to this testimony, Gainey was in the cab back of the engineer, who turned around with his face toward Gainey and his back in the direction toward which the train was going. In this position, he could not, as he testified he did not, see the deceased. On redirect examination, however, Gainey testified as follows:

"Q. Were you standing ahead of the engineer, or back of the engineer? A. Ahead of the engineer."

And on recross-examination he further said:

"Q. How long had you been standing in front of the engineer before you saw this man doing what you say he did? A. I had been standing there from the time we left Whitehouse Station.

"Q. So you could see right out the window, is that right? Just as I am looking; do you remember, Gainey? A. Straight ahead.

"Q. The engineer was behind you? A. Yes, sir.

"Q. Had to peek around you to get a view of the track? A. He would have to stick his head out of the window.

"Q. He would have to stick his head out the window to even see the track, and you stood right there from the time you left Whitehouse Station, right in front of him all the way? A. Yes, sir."

If Gainey was in this last-named position, which is exactly opposite to the position he previously said he occupied, the engineer could not have seen Voorhees when he started across the tracks. If the base out of which the water plug arose was midway between the tracks, there was a space of 3 feet 8¼ inches between it and the rail, and above the base, which was 2 feet and 2 inches in height, there

was at least a distance of 5 feet 3¼ inches between the rail and standpipe. At some little distance above the base the standpipe is only 1 foot in diameter, and so at that point there was a distance of 6 feet 3¼ inches between the plug and the nearest rail of the tracks on which Voorhees was killed. While the deceased was walking this distance he was in sight, and could and would have been seen, from the time he left the standpipe by the engineer, if he had been looking, and his vision had not been cut off. If the engineer had seen him, he said that he would have blown the whistle, and the deceased could have stopped before going on the track; but he did not see him, and did not give any warning of the approach of the train.

Whether Gainey was standing in front of the engineer and obstructed his view, or in the rear and the engineer had turned around and was looking at him, and not in the direction in which he was going, are clearly questions of fact for the determination of the jury, on which it might have concluded that the railroad company was negligent. The learned trial judge could not have directed a verdict for the defendant, except upon the hypothesis that he had found the facts and concluded from his findings that the defendant was not guilty of negligence. Under the evidence in this case, he could not thus usurp the function of the jury and determine the facts.

[2] It was the duty of the deceased to have looked along the track for the approaching train before he started to cross, and if he had looked he would have seen the train coming. He evidently did not look, and was clearly negligent for not doing so. But negligence of a plaintiff or plaintiff's intestate under the federal Employers' Liability Act (Comp. St. §§ 8657–8665) does not necessarily bar the action and prevent the recovery of damages. It only diminishes them, if the employer is at the same time negligent. Federal Employers' Liability Act, § 3 (35 Stat. 65 [Comp. St. § 8659]). There was evidence from which the jury could have found that both the deceased and the defendant employer were neg-ligent. In this state of the testimony, the case should have been submitted to the jury, with instructions as to the law. Commonwealth v. Anthes, 5 Gray (Mass.) 185, 198; Sparf & Hansen v. United States, 156 U. S. 57, 102, 715, 15 S. Ct. 273, 39 L. Ed. 343.

[3] But, regardless of its own negligence, the defendant says that the deceased assumed the risk of his employment and cannot recover. It is true that an employee assumes the risks normally and necessarily incident to his employment. Aerkfetz v. Humphreys, 145 U. S. 418, 12 S. Ct. 835, 36 L. Ed. 758; Connelley v. Pennsylvania Railroad, 228 F. 322, 142 C. C. A. 614; Davis v. Philadelphia & Reading Railway (D. C.) 276 F. 187; Smith v Payne (C. C. A.) 269 F. 1; Lehigh Valley R. Co. v. Doktor (C. C. A.) 290 F. 760. He also assumes the extraordinary risks or risks caused by his employer's negligence, but only when they are fully known by him, or are obvious and such as would under the circumstances be seen and appreciated by an ordinarily prudent person. Gila Valley, G. & N. Ry. Co. v. Hall, 232 U. S. 94, 34 S. Ct. 229, 58 L. Ed. 521; Seaboard Air Line Ry. v. Horton, 233 U. S. 492, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; Boldt v. Pennsylvania R. Co., 245 U. S. 441, 38 S. Ct. 139, 62 L. Ed. 385; Director General of Railroads v. Templin (C. C. A.) 268 F. 483.

It is admitted that the defendant was engaged in interstate commerce. The suit was brought under the federal Employers' Liability Act. It was for the jury, under the circumstances, to say whether or not the defendant's negligence in part caused the accident, and whether or not, if negligent, that negligence was fully known to the deceased, or was obvious and such as would, under the circumstances, have been seen and appreciated by an ordinarily prudent person. The trial judge fell into error when he decided these questions as a matter of law, and directed a verdict for the defendant.

The judgment is therefore reversed, and a veniri facias de novo awarded.