Emmett Spencer v. Quincy, Omaha & Kansas City Railroad
Company, Appellant.—297 S. W. 353.

Division One, June 25, 1927.

1. NEGLIGENCE: Right to Select Method of Work. The master has the
right to select his own method of doing work, provided he exercises the right
within the limits of ordinary care. If the method employed is not a reason-
ably safe one, and other methods just as practicable and equally available
are, he is clearly negligent in adopting it.

2. ———: Unsafe Method: Proximate Cause. If the injury to the work-
man, whether an accident or the result of inattention on the part of those
engaged in the work, may be regarded as merely an incident of the unsafe
method employed an one which could easily have been anticipated, it cannot
be held as a matter of law that the unsafe method adopted by the master was
not the proximate cause of the injury and that the careless way in which
the method was applied was, but whether the unsafe method was itself the
efficient and proximate cause of the injury is a question for the jury to
determine.

3. ———: Assumption of Risk: Moving Piling. It cannot be ruled as a
matter of law that the workman assumed the risk incident to the "lancing"
method of moving old bridge piling, where under the evidence it becomes a
question for the jury to determine whether he knew the dangers attendant
upon that method of doing the work, or whether they were so plainly ob-
servable that as a man of ordinary intelligence he must be presumed to
have known them.

4. EVIDENCE: Irrelevant: Stricken Out. It cannot be ruled that the court
erred in admitting irrelevant evidence, where the record shows that such
testimony when offered was invariably stricken out.

5. INSTRUCTIONS: Contradictory. An instruction authorizing a verdict
for plaintiff if "the jury believe from the evidence that said four men
and two lug hooks were not a reasonably safe force to do said work and if
they believe that said method was not a reasonably safe method, under the
circumstances," of moving piling, and an instruction telling the jury that
defendant was not guilty of negligence "in not furnishing more men to
handle the pile," are not conflicting. With both instructions before the jury,
it must be assumed that they merely found that the method of doing the
work was not a reasonably safe one.

6. ———: Contributory Negligence: Useless Luggage. For plaintiff to ask
and the court to give instructions "on the issue of contributory negligence,"
when there is no such issue in the case, is merely dragging in useless
luggage, and is not error where appellant does not seem to have been
prejudiced thereby.

7. ———: Accident. Where the injury to the plaintiff may have been an
accident resulting from the unsafe method employed for doing the work,
and such accident may have reasonably been foreseen, it is not error to give
an instruction telling the jury that if plaintiff was injured by reason of
the negligence of defendant, then the injury was not in law the result of
an accident, even though some accident may have occurred at or about the
time of the injury.

8. ———: Evidence: Expert Opinion: Comment and Caution. The opinion
of an expert, when admissible at all, is evidence. Sometimes it is the only

evidence by which proof can be made; and its value as evidence is always for the jury. There is no reason for singling out the testimony of experts, especially where it is based in part upon their own observation, for discrediting comment and caution in the instructions.

9. ————: ————: ————: **Mixture of Fact and Inference: Discrediting Comment and Caution.** An instruction which tells the jury that "an expert witness is one who is skilled in any particular art, trade or profession and possessed of peculiar knowledge concerning the same, acquired by study, observation and practice. Expert testimony is the opinion of such witness, based upon the facts in the case as shown by the evidence, but it does not even tend to prove any fact upon which it is based, and before you can give any weight whatever to the opinion of expert witnesses you must first find from the evidence that the facts upon which it is based are true. The jury is not bound by expert testimony, but it may be considered by you in connection with the other testimony in the case", is erroneous and inapplicable in a case in which the testimony of the medical experts consists of a mixture of facts they had observed from physical examinations made of plaintiff's ankle joint and X-ray pictures of it read by them, and inferences they have drawn from the facts observed and the testimony heard; for no jury can separate with any degree of precision their fact-testimony from their opinion-testimony. The first part of the instruction may properly be given where the expert's opinion is based solely upon hypothetical facts; but the propriety of giving in any case the direction embodied in its last sentence is extremely doubtful.

10. ————: **Common Error.** Appellant cannot complain of an instruction given for respondent, where he asked and was given a similar instruction. The error being common to both parties, neither can complain of the instruction given for the other.

11. **EXCESSIVE VERDICT: $41,375: Crippled Ankle.** To a railroad bridge carpenter, thirty-two years of age, normal in every respect and enjoying perfect health, and earning $4.25 per day, the jury, in an action grounded on the Federal Employers' Liability Act, awarded $41,375 as damages for an injury to his right leg, which consisted of torn and strained ligaments and fractured bones at and just above the ankle joint, which, eight months afterwards, still caused him pain, and had resulted in the bones spreading whenever he placed his weight upon it, to avoid which he was compelled to turn the foot in and walk on the outside of it; and this loose condition of the joint was pronounced by the experts to be chronic and permanent, and he will probably be a cripple the remainder of his life, but the impaired ankle is better than no leg at all. **Held,** that the judgment will be permitted to stand only on condition that he remit $31,375 as of its date.

Corpus Juris-Cyc. References: **Appeal and Error,** 4 C. J., Section 2620, p. 709, n. 26; Section 2718, p. 772, n. 88; Section 2891, p. 920, n. 62; Section 2972, p. 989, n. 16. **Damages,** 17 C. J., Section 438, p. 1107, n. 63. **Evidence,** 22 C. J., Section 823, p. 728, n. 73; Section 825, p. 736, n. 40. **Master and Servant,** 39 C. J., Section 566, p. 451, n. 59; Section 1316, p. 1122, n. 84; Section 1365, p. 1188, n. 14; Section 1410, p. 1227, n. 46. **Trial,** 38 Cyc., p. 1737, n. 48.

Appeal from Livingston Circuit Court.—*Hon. Arch B. Davis,* Judge.

AFFIRMED (*on condition*).

*J. G. Trimble, S. L. Sheetz* and *H. J. Nelson* for appellant.

(1)   Defendant's demurrer to plaintiff's case should have been sustained, and the peremptory instruction to find for defendant, offered at the close of all the evidence, should also have been given, for the following reasons: (a)   There was an entire failure of proof and no case made for submission to the jury, because there was no evidence of negligence on the part of the defendant.   (b)   The petition alleged an insufficient number of men was furnished to do the work, but no one testified four men could not safely do the work. Plaintiff merely testified he did not think four men could carry the piling, but the piling were not being carried when being handled by the lancing method..   (c)   Plaintiff failed to show the condition of the ground over which the men were moving the piling had any connection whatever with plaintiff's injury, so that the only allegation of negligence remaining as the basis for plaintiff's attempt to make a case was that the lancing method was not reasonably safe. There was no proof that method was not reasonably safe.   Plaintiff merely proved other methods have been used on other railroads, and were more economical and faster.   (d)   Defendant had a right to select its own method of doing the work, and was not bound to follow the method used on some other railroad.   Proof of a different method used on other railroads twenty-five to thirty years before, or that other methods were safer, did not constitute competent proof that the lancing method used on defendant's railroad was not reasonably safe, and there was no evidence tending to prove that method was not reasonably safe.   18 R. C. L. 588; Chrismer v. Bell Tel. Co., 194 Mo. 189, 209, 6 L. R. A. (N. S.) 492, note; Coin v. Lounge Co., 222 Mo. 488, 506; Steinhauser v. Spraul, 127 Mo. 562. (e)   Even if it be held that plaintiff introduced some proof in support of the allegation that lancing was not a reasonably safe method, yet there was no proof plaintiff's injury resulted from any necessarily dangerous element mentioned by any witness, hence the dangers referred to in the lancing method were not the proximate causes of plaintiff's injury, and created no basis for submitting to the jury the question of whether lancing was a reasonably safe method of doing the work.   Manifestly, the injury to plaintiff was not the result of the method used to handle the piles, but was the result of the careless way in which the method was applied to a particular pile at a particular stage of the operation.   To make a case, the master must be guilty of the negligence charged, and said negligence must have been the proximate cause of the injury.   Proof of a danger which did not cause the injury is irrelevant.   Harris v. Decker, 190 S. W. 969.   (f)   If it be assumed that in using the lancing method there was danger of a man being injured in the way plaintiff was injured, yet the danger was obvious to plaintiff when he assumed the position he occupied between the ''ways'' at the time of the

injury. There was no hidden or unknown danger. It was a simple process, and at all times obvious that a way not already weighted down with other piling would be moved forward with the piling if the men handling the lug hooks failed to raise the pile high enough to clear the way. Plaintiff himself had placed in position the way which struck his foot, and did nothing to prevent the way from moving. This case was brought under the Federal Employers' Liability Act, and plaintiff must be deemed to have assumed the risk of being injured in the way in which he was injured. Seaboard Air Line v. Horton, 233 U. S. 492; Pryor v. Williams, 254 U. S. 43; Steinhauser v. Spraul, 127 Mo. 562. (2) The court erred in permitting plaintiff's witnesses to testify to other methods in use on other railroads for doing the same kind of work, because said evidence was irrelevant, and did not tend to prove any issue in the case. (3) Plaintiff's given instruction numbered 3 is in conflict with Instruction D-5 given on behalf of defendant which told the jury there was no evidence that defendant was negligent in not furnishing more men to handle the piles. (4) Plaintiff's given instructions numbered 5, 5a and 7 are each beyond the scope of the pleadings in the case and were improperly included among the instructions. Plaintiff founded his right to recover upon charges of negligence. There was no plea of contributory negligence. Instructions on contributory negligence and accident could only mislead and confuse. Lamar v. Salt Co., 242 S. W. 691; Bethurkas v. Railway, 249 S. W. 439; Beard v. Railroad, 272 Mo. 156; Turnbow v. Dunham, 272 Mo. 65; Felver v. Railroad, 216 Mo. 209; Nehring v. Monroe, 191 S. W. 1055; Head v. Lumber Co., 281 S. W. 441; Yawitz v. Novak, 286 S. W. 67. (5) Plaintiff's given instruction numbered 11 is erroneous. (a) Plaintiff's expert witnesses testified the method of doing the work was reasonably safe. This instruction told the jury they might disregard that testimony, thus depriving defendant of this beneficial testimony introduced by plaintiff and by which he was bound. Kansas City v. Morris, 276 Mo. 167. (b) There was much testimony of doctors as to facts they found on physical examinations and X-ray pictures. This testimony was founded on the fact that examinations of plaintiff were made and the pictures were pictures of the plaintiff's leg. Under this instruction the jury were told this evidence did not "even tend to prove" anything whatever and was not entitled to be "given any weight" whatever. This instruction took away from the jury all evidence concerning what the doctors found by their physical examinations and what the pictures showed regarding injury or non-injury to the bony structures. It was highly prejudicial to defendant. Kansas City v. Morris, 276 Mo. 167. (6) The verdict is so excessive as to plainly show it was the result of sympathy, passion and prejudice and should be set aside. Henry v. Railroad, 282 S. W.

424. A mere *remittitur* will not cure the error. Kelly v. Box Co., 248 S. W. 590; Divine v. Wells, 300 Mo. 117; Dietrich v. Brewery, 286 S. W. 44; Chambers v. Kennedy, 274 S. W. 729; Allen v. Autenrieth, 280 S. W. 81. The instruction on measure of damages did not authorize any allowance of damages for loss of earnings in the future. The amount of the verdict indicates the jury must have allowed damages therefor.

*Davis & Ashby* and *Hubbell Bros.* for respondent.

(1)  The lancing method of moving piles, is not a reasonably safe method. Foster v. Ry. Co., 115 Mo. 165; Fogus v. Ry. Co., 50 Mo. App. 250.  (a)  Plaintiff was injured by defendant's said negligent method of doing the work.  (b)  The negligent method of doing the work was the proximate cause of the injury.  (c)  Negligence of the master concurred with the negligence of a fellow-servant to produce the injury. Kreigh v. Westinghouse Co., 53 L. Ed. 988, 214 U. S. 249; Beck v. Co., 210 Mo. App. 351, 239 S. W. 166; Appelgate v. Railroad Co., 252 Mo. 173, 198.  (d)  Plaintiff need not show that defendant could have anticipated the very injury which occurred. Buckner v. Horse & Mule Co., 221 Mo. 700; Kidd v. Ry. Co., 274 S. W. 1090; Walter v. Portland Cement Co., 250 S. W. 587.  (e) The negligent method of doing the work was the proximate cause of the injury where a "square" should have been used instead of a measuring board. Simick v. Bridge & Iron Co., 232 S. W. 243.  (f) The plaintiff is entitled to recover where the men were loading timber by hand, whereas skids and other appliances should have been furnished and used to load timber onto the car. Olson v. Carlson, 132 Pac. 722, 74 Wash. 39; Luff v. Foundry Co., 204 S. W. 597.  (g) Assumption of risk is fully discussed in the following authorities: Voorhees v. Railroad Co., 14 Fed. (2d) 901; Allen v. Ross, 290 S. W. 122; Davis v. Crane, 12 Fed. (2d) 357; Gila Valley, G. & N. R. Co. v. Hall, 232 U. S. 94, 58 L. Ed. 521; Kidd v. Ry. Co., 274 S. W. 1090; Adams v. Railroad Co., 287 Mo. 535, 553; Director General of Railroads v. Templin, 286 Fed. 485, 254 U. S. 655; Hall v. Ry. Co., 279 S. W. 152, 46 Sup. Ct. Rep. 483; Ross v. May, 140 N. E. (Ind.) 581. (2)  The reasonably proper method of doing the work is the correct test of reasonable care.  The evidence of plaintiff's expert bridge builders is competent.  Tex. & Pac. Railroad Co. v. Behymer, 47 L. Ed. 906, 189 U. S. 465; Midland Valley Railroad Co. v. Bell, 242 Fed. 803; LeHigh Valley Railroad Co. v. Normile, 254 Fed. 680; Kreigh v. Westinghouse Co., 53 L. Ed. 984, 214 U. S. 249; Wells-Stone Merc. Co. v. Truax, 44 W. Va. 531; Fairfield v. Bicher, 195 Mo App. 51; Enloe v. Car & Foundry Co., 240 Mo. 443; O'Dowd v. Railroad, 166 Mo. App. 670; Trans. Line v. Hope, 24 L. Ed. 478, 95 U. S. 297.

(3) The fact, that plaintiff's instructions placed additional bur-- dens on the plaintiff, and gave the defendant the benefit of issues not sustained by its pleadings or evidence, does not give the defendant any ground of complaint in this court. Wolfe v. Payne, 294 Mo. 170, 68 L. Ed. 28; Turnbow v. Rys. Co., 277 Mo. 644; Walter v. Portland Cement Co., 250 S. W. 588; Block v. U. S. Fid. & Guar. Co., 290 S. W. 439; McIntyre v. Ry. Co., 286 Mo. 234, 227 S. W. 1047; Kidd v. Ry. Co., 310 Mo. 40. (4) Plaintiff's instruction num- bered 11 is correct. Smith v. Telephone Co., 113 Mo. App. 443; Buck- alew v. Railroad, 107 Mo. App. 588; Kansas City v. Morris, 276 Mo. 158. (5) Any excess in the verdict should be cured by a *remittitur*. Hammond v. Railroad Co., 15 Fed. (2d) 67; Stahl v. Ry. Co., 287 S. W. 634, 46 A. L. R. 1300, 1318; Taylor v. Mo. Pac. Ry. Co., 279 S. W. 115; Taxicab & Transfer Co. v. Pratt, 2 Fed. (2d) 194; Skinner v. Davis, 312 Mo. 581, 599; Delvin v. St. Louis, 252 Mo. 203; Hubbard v. Wabash Railroad Co., 193 S. W. 579; Apple- gate v. Railroad Co., 252 Mo. 173; Bosher v. Ry. Co., 15 Fed. (2d) 389.

RAGLAND, J.—Action under the Federal Employer's Liability Act for personal injuries alleged to have been caused by defend- ant's negligence. The injuries complained of were received on Au- gust 10, 1923, near Reger, Sullivan County, Missouri, while plain- tiff, pursuant to his employment by defendant, was working as a bridge carpenter. For a statement of the facts which disclose the circumstances under which, and the manner in which, the in- juries were received we adopt that of appellant (defendant) in part, as follows:

"Plaintiff was one of a gang of about seven men, working under foreman Cowan, who had reconstructed a wooden pile trestle in de- fendant's track where it crossed a small stream. They had been at work on the job two or three weeks. The new bridge had been practically completed, and during the work the old timbers had been torn loose and allowed to fall under the bridge, and the old piling had been cut off or sawed off at or about the ground level, and allowed to fall where they would, and the work undertaken on the day of the accident, and a short time before the accident, was the removal of said old piling and timbers from under the bridge to a point at right angles to the track and about fifty feet therefrom, where they were being piled in such way that they could be lifted up and loaded by a derrick on cars standing on or near the bridge, on some other day, by a different crew. To facilitate said loading of the timbers, they were being piled cross- wise on 'ways' timbers four inches thick by ten inches wide, which had been used as sway braces in the old bridge, having been

317 Mo. Sup.—32.

selected as the most available timbers for 'ways,' and two of said timbers were used as 'ways' for each pile of piling, said timbers having been laid broadside down on the ground.   Immediately previous to the commencement of the pile on which plaintiff was injured, plaintiff, with three helpers, had made a pile of piling on similar skids on the south side of the creek, about the same distance east of the track, and upon completion thereof, they were directed by the foreman to make a similar pile of piling on similar 'ways' on the north side of the creek.   The particular timber used for a 'way' and by which plaintiff was later injured, was put in place by plaintiff and after being first so placed by plaintiff, the foreman instructed him to block up one end, and he did so.   Plaintiff with another bridge carpenter working opposite him, and two other helpers, started in to make said pile of piling on the north side of the creek, and brought one pile from under the bridge and placed it on the 'ways' and had brought another pile up to and were in the act of placing it upon the 'ways' when the injury to plaintiff occurred.   For the handling of the pile, the men were provided with a tool known as a "lug hook,' and had two of them, two men being assigned to each lug hook.   The lug hook consists of a stout wooden handle or shaft, about five feet long, with a grab hook attached in the middle, constructed of iron, to operate on the same principle as the ordinary ice tongs, so that when the horizontal points of the tongs were inserted into the wood of the piles, and force was applied to the handle of the lug hook by lifting up on it, the weight of the pile would keep the points of the hook engaged and tend to drive them deeper into the wood.   In the use of the hooks, one man would be at each end of the handle, thereby placing one man on each side of the pile, and they were moving the piles from under the bridge to the 'ways' by a method known as 'lancing.'   The four men, with their two lug hooks, had attached the lug hooks near the heavy or butt end of the pile.   The two helpers (bridge · gang laborers) were handling the lug hook that was attached nearest the east or forward end of the pile, and plaintiff and the other bridge carpenter were handling the second lug hook, which they had affixed to the pile at such distance behind the forward lug as they deemed proper.   The method of handling the pile consisted in all four of the men lifting on the two lug hooks at the same time, and swinging the piling as far eastward or forward as they could, while retaining hold of the lug hooks, their feet remaining in the position occupied when the pile was thus lifted.   The men would then change the position of their feet forward without releasing the hold of the lug hooks, and lift up and swing forward again.   By this method, the movement of the pile in question had proceeded to the point where the

easterly or forward end had been moved far enough east to rest on the westerly 'way,' and all four of the men were between the two 'ways' when they made the movement of the pile by which plaintiff was injured. Plaintiff was standing just inside of and near the westerly 'way,' and on the north side of the piling, facing the other bridge carpenter who was opposite him on the south side. They all lifted at the customary signal, and shoved or threw the pile forward, when the pile caught upon the westerly 'way,' and carried the 'way' with it far enough east to strike plaintiff's right leg, thereby injuring it.''

The ravine crossed by the bridge trestle was about 32 feet in width at the bottom. Along this bottom and following its meanderings a narrow water channel threaded its way. Between it and the sloping ground on the north side there was a level strip varying in width from six to eight feet. It was along this narrow way that the piling had to be "lanced" from under the bridge a distance of about fifty feet to where they were being piled on the cross timbers. The ground was wet and muddy, covered with small rocks, blocks and other debris from the recent bridge construction. The piles to be moved were round timbers, varying in length from 12 to 26 feet and weighing from 500 to 1,000 pounds. The one being "lanced" at the time plaintiff was hurt was between 15 and 16 feet in length, weighing from 500 to 600 pounds, and was wet and slick and mud covered in part. The lower or butt end was rotten to a considerable depth from the surface. A portion of this decayed surface fell off while it was being "lanced," exposing a protruding knot. When the piling was swung forward in the act of "lancing" it, the rough surface (caused by the falling off of the decayed part or the protrusion of the knot) engaged the "way" or cross timber and jerked it with great violence against plaintiff's right leg just above the ankle. The nature and extent of the injuries thereby inflicted will be described later on.

Plaintiff called as witnesses five men who had had many years' experience in building and re-building railroad trestle bridges, including the removal of old piling under circumstances more or less similar to those involved in this case. Some of them had done such work for only one railroad; others had at different times been employed in the bridge department of several railroads. A considerable period of time had elapsed since any of them were so engaged. In answer to a hypothetical question which accurately set forth the surrounding conditions as shown by the evidence, each gave it as his opinion that the "lancing" method of removing piling under those conditions was not a reasonably safe one. For example, Winter said:

"Because those lug hooks are not a safe piece of machinery to grab pile with. I noticed here yesterday in the court room, probably you observed it, where those men picked up that pile, and this lug hook broke its hold, and they will absolutely do it every time you grab into a round pile with them; if you have a timber, a square timber, they will hold reasonably well then, but they are not safe then. They will pull out, and probably the next man behind you, well, he will grab the whole load, and that will break him down; the man ahead of him has to hold it or they will roll on your legs and cripple you, flop around like a chicken with its head cut off. That is my theory, that is the reason why I say that they won't do it."

And Ford said:

"In case they let loose it might slide over and catch their feet. And then in piling, putting those pieces down there, and taking and dragging these big timbers over there, of course you are liable to pull them onto you at any time, unless they are fastened."

In connection with their reasons for saying that the "lancing" method was not a safe one, these witnesses described other methods which they regarded as safe. One method was to drag the piling with a team of horses; others involved the use of a mechanical appliance, such as the derrick. These methods they said were not only safe, but more expeditious and economical than that of "lancing."

Plaintiff, after serving an apprenticeship of three months, was promoted by the defendant to the position of bridge carpenter. He was what is called a "top man," and had worked as such for three years prior to his injury. With respect to his knowledge of the danger of moving piling by "lancing" them, he testified:

"Why, I had never moved any pile of that length. I didn't know but what it was all right to move them in that way. I didn't see no danger in it, didn't see anything wrong with it, and I didn't have any more knowledge of it than that. I trusted to the foreman's judgment, as he had worked at the work many years, and I would rather trust his judgment than trust my own, because there is lots of work I had never worked at yet."

The only evidence offered by defendant was with reference to the nature and extent of plaintiff's injury.

The petition is long and somewhat argumentative, but the negligence which it charges repetitiously and in varying phraseology seems to be epitomized in the following excerpt:

"Defendant then and there and thereby, negligently, failed to furnish and provide a reasonably safe method of moving said pile; and, the defendant, then and there and thereby, negligently failed to furnish a reasonably sufficient number of men and a reasonably

sufficient force for moving said pile, by the method then used; and, defendant, then and there and thereby, negligently failed to furnish and provide reasonably necessary, and a reasonably sufficient number of lug hooks, tools, machinery and appliances for moving said pile; and, the defendant then and there and thereby, negligently required the plaintiff to pull, lift and work on said pile at, and in a place which was not reasonably safe."

The answer was a general denial and a plea of assumption of risk.

Plaintiff sued for $60,000. The jury awarded him $41,375. Such is the size of the judgment appealed from.

Appellant assigns as error: (1) the refusal of its instruction in the nature of a demurrer to the evidence; (2) the admission over its objection of certain testimony offered by plaintiff; and (3) the giving of certain instructions asked by plaintiff. It further presses as a ground for reversal the excessiveness of the verdict.

I. Appellant advances a number of reasons why its demurrer to the evidence should have been sustained.

1. It says in the first place that liability can not be predicated of its use of the "lancing" method of moving piling, because it had the undoubted right to select its own method of doing the work. Its right in that respect, however, was a qualified **Right to** one, that is, from the standpoint of incurring liability; **Select** it was bound to exercise the right within the limits of **Method.** ordinary care. [Kuhn v. Lusk, 281 Mo. 324, 338.] If the method employed was not a reasonably safe one and other methods just as practicable and equally available were, as the evidence tended to show, then it was clearly negligent in adopting it.

2. Appellant next insists that, even though it was guilty of negligence in respect to the method used, such negligence was not the proximate cause of plaintiff's injury; that on the contrary the injury resulted from "the careless way in which the method was **Proximate** applied to a particular pile at a particular stage of the **Cause.** operation." But the contact of the pile with the cross timber over which it was being "lanced" and the consequences which followed, whether an accident or the result of inattention on the part of those engaged in the operation, may be regarded as merely an incident of the method employed and one which could reasonably have been anticipated. Whether the method itself was the efficient and proximate cause of the injury was for the jury to determine.

3. It is finally contended under this head that plaintiff assumed the risk incident to the "lancing" method of moving piles. Whether he knew of the dangers attendant upon that method **Assumed** of work, or whether they were so plainly observable that **Risk.** as a man of ordinary intelligence he must be presumed to have known them, was on the evidence a question for the jury.

II.   The assignment under this head is: "The court erred in permitting plaintiff's witnesses to testify to other methods in use on other railroads for doing the same kind of work, because said evidence was irrelevant, and did not tend to prove any issue in the case."   There does not seem to be any basis in the record for it, however.   Plaintiff's experts in detailing their testimonial qualifications told what railroads they had worked for, how long and when.   In doing so they occasionally referred to the method of work used by them when in the service of such roads, but so far as we have been able to find this portion of their testimony was invariably stricken out when objected to by defendant.

**Irrelevant Evidence.**

III.   1.   Plaintiff's main instruction is alleged to have been in conflict with one given for defendant.   Plaintiff's instruction authorized a verdict in his favor, if, among other things, "the jury believe [ed] from the evidence that said four men and two lug hooks were not a reasonably sufficient force to do said work by man-power alone; *and*, if they believe [ed] from the evidence that said method of doing said work was not a reasonably safe method, under the facts and in the circumstances mentioned in evidence."   Defendant's instruction told the jury that there was no evidence that it was guilty of negligence "in not furnishing more men to handle the pile."   With these two instructions before them, it must be assumed that the jury found merely that the method of doing the work was not a reasonably safe one.   There are other criticisms of plaintiff's instruction but they are without substance.

**Instructions: Conflicting.**

2.   Plaintiff offered and the court gave two instructions "on the issue of contributory negligence."   There was no such issue.   What plaintiff's purpose was in setting up a "straw man" to knock down is not discernible.   We have read the record carefully, including the opening statement and the closing argument of his counsel, and do not find that plaintiff's freedom from negligence was anywhere featured in the case.   The instruction was merely useless luggage.   Defendant does not seem to have been prejudiced thereby.

**Contributory Evidence.**

3.   Complaint is made of an accident instruction given at the request of plaintiff which told the jury that if plaintiff was injured by reason of negligence of the defendant, as defined in other instructions, then the injury was not in law the result of an accident, even though some accident may have occurred at or about the time of the injury.   What is said with respect to "accident" in paragraph 2, I, suggests a sufficient reason for the propriety of giving the instruction.

**Accident.**

4. At the request of plaintiff the following instruction was given:

"An expert witness is one who is skilled in any particular art, trade or profession, being possessed of peculiar knowledge concerning the same, acquired by study, observation and practice. Expert testimony is the opinion of such witness, based upon the

**Expert Opinion.** facts in the case as shown by the evidence, but it does not even tend to prove any fact upon which it is based, and before you can give any weight whatever to the opinion of expert witnesses you must first find from the evidence that the facts upon which it is based are true. The jury is not bound by expert testimony, but it may be considered by you in connection with the other evidence in the case."

This instruction was taken bodily from Smith v. Telephone Co., 113 Mo. App. 443, where it had the unqualified approval of the Kansas City Court of Appeals. Nevertheless, it was erroneous, at least as applicable to the evidence in this case. There were some five or six medical experts who testified with respect to plaintiff's injuries—torn or strained ligaments and fractured bones at or just above the ankle joint. They had made physical examinations and they had "read" X-ray pictures, and from both had diagnosed the conditions of the injured parts. Their testimony consisted of a mixture of the facts they had observed and the inferences they had drawn from those facts. Neither a skilled lawyer nor a trained psychologist, much less a jury of laymen, could have separated with any sort of precision the fact-testimony of these experts from their opinion-testimony. The first part of the instruction could very properly have been given if the experts' opinions had been based solely on hypothetical facts; but the propriety of giving in any case the direction embodied in the last sentence is extremely doubtful. The opinion of an expert when admissible at all, is *evidence;* sometimes it is the *only evidence* by which proof can be made (O'Leary v. Scullin Steel Co., 303 Mo. 363 ); and its *value* as evidence is always for the jury. [Thompson v. Ish, 99 Mo. 160.] Besides, what reason can there be for singling out the testimony of experts for comment and caution when their testimony must be considered and weighed just like the testimony of other witnesses? [Morrow v. Gas & Electric Service Co., 286 S. W. 106, 116.]

But all the foregoing is merely by the way. A similar instruction was given at the request of the defendant. The error being common to both parties, the defendant is not in a position to complain of it.

IV.   Appellant's final complaint is with reference to the exces-
siveness of the verdict; that appears to be its real griev-
**Excessive** ance.   The facts having an immediate bearing on that
**Verdict.** question, as disclosed by plaintiff's evidence, are briefly
these:

Plaintiff at the time he received his hurt was thirty-two years of
age, normal in every respect and enjoying perfect health.  He was,
as heretofore stated, a railroad bridge carpenter and as such he
was earning $4.25 per day.  At the time of the trial, eight months
after the injury to his right leg, he was still using a cane or crutch
to aid him in walking.   When he would put his foot down level
and bear any weight on it, the ankle would turn out.  He said: ''I
can't hold the ankle, support the ankle.  .  .  .  It will turn to
a certain extent just stepping right on the level all the time, if
I don't walk  .  .  .  on the outside of my foot.  .  .  .  I ex-
perience pain in the knee, and in stepping on the foot, and when
the ankle turns.''   To avoid the turning of the ankle and the con-
sequent pain he found it necessary to turn the foot in and bear his
weight on the outside of it when walking.   The X-ray plates to
which the ankle joint had been exposed showed that there had been
an oblique fracture of the fibula an inch or more above the lower
end, and also that a piece of the lower end of the tibia (the inter-
nal malleolus) had been broken off.  But there had been a perfect
union of the parts.   The joint was not normal, however, according
to plaintiff's experts.   In this: where the lower ends of the tibia
and fibula come together they form a concave surface which fits
over the top bone of the foot (the astragalus) like a saddle; the
ligament which holds the two leg bones together at the ankle, in
plaintiff's leg, had been torn or loosened, so that it permitted the
bones to spread apart, with the result that the ''saddle'' turned
whenever any weight was put upon it.   The X-ray further showed
some irritation where the upper end of the fibula joined the tibia,
which was attributed by one of plaintiff's expert witnesses ''to
the greater movement imparted at the joint by the loose condition
of the bones at the ankle.''   The condition of the ankle joint just
described was said to be chronic and permanent.

Plaintiff's weight at the time he received the injury was 139
pounds; at the time of the trial it was 126.  He did not sleep well
at night owing to the continued recurrence of pain in his ankle
and the mental worry growing out of the fact that he would in
all probability be a cripple during the remainder of his life.

With respect to plaintiff's future loss of earnings, one of his
doctors said:   ''I think it incapacitates him severely.''   Another
said:   ''Well, it affects it [the leg] a great deal to labor, he can't
walk good on account of that joint being weakened by the spread-

ing of the joint." And a third said: "Well, in my opinion a man couldn't do much work or lifting, or anything when he had to put much weight on his foot." This was all the evidence on that subject.

Without any intention of minimizing plaintiff's injury, an assessment of his damages at the sum of $41,375 is most extraordinary to say the least. There was no suggestion at the trial that the pain and inconvenience might to some extent be overcome by the use of an artifical brace or support. But in any event a leg with a weak or impaired ankle is better than no leg at all. If our former rulings are to count for anything, $10,000 is the maximum recovery which can be permitted in this case.

The judgment of the circuit court is affirmed, if the plaintiff will within ten days enter a *remittitur* in the sum of $31,375 as of the date of the original judgment; otherwise, the judgment will be reversed and the cause remanded. All concur.