Cora Elnora Demaray, Administratrix of the Estate of Theodore Charles Demaray, v. Missouri-Kansas-Texas Railroad Company, a Corporation, Appellant.—50 S. W. (2d) 127.

Division One, May 27, 1932.*

Carl S. Hoffman and Montgomery & Rucker for appellant.

*NOTE: Opinion filed at October Term, 1931, February 11, 1932; motion for rehearing filed; motion overruled April 2, 1932; motion to transfer to court en banc filed; motion overruled at April Term, May 27, 1932.

*W. W. McCanles* for respondent.

GANTT, P. J.—Action to recover damages under the Federal Employers' Liability Act for the death of Theodore C. Demaray, while he was working for defendant as a switchman in its yard at Kansas City, Kansas. Judgment for plaintiff for $15,000. Defendant appealed.

The case was submitted to the jury on the charge that defendant kicked and suddenly moved a car which deceased, in the course of his employment, was attempting to board and that it negligently did so without warning deceased of said intended movement, which was contrary to a long established custom existing in said yard and

592

well known to defendant and its employees. The other charges of negligence were abandoned.

The answer was a general denial with pleas that the injury and death were caused by the negligence of deceased and that he assumed the risk of said injury. The reply was a general denial.

At the beginning of .the trial, defendant moved to compel plaintiff to elect on which of several alleged inconsistent specifications of negligence she would proceed to trial. The motion was overruled. Thereafter and at the close of the evidence for plaintiff, the petition was amended without objection by striking therefrom certain parts thereof. Plaintiff contends that this amendment removed all inconsistency. Defendant did not think so and renewed its motion. The motion was overruled. Of this defendant complains and states "that a careful reading of the petition will disclose that plaintiff pleaded on the one hand that the deceased was unaware that any signal had been given to cut off and kick the car, and on the other hand that he was aware that such signals had been given." We have carefully read the petition several times and are unable to find a plea that deceased knew such signals had been given. The motion was well ruled.

The facts follow: The tracks in this part of the yard run northeast and southwest and curve to the east. A public street crosses them at about the center of the yard. On the day of the injury, the switch engine coupled to the south end of a string of six cars was standing some distance south of the crossing. At this time yardmaster Waddell directed the foreman, within the hearing of the switchman, to shove the cars on to the scale track and eat dinner. The engine and cars were several hundred feet south of the lead or switch to the scale track. And the lead to track No. 4 was between the engine and cars and the lead to the scale track. On this order of the yardmaster, the foreman and switchmen.proceeded to assume their several positions. Custer, the field man, walked northward toward the scale track; Cooper, the foreman, walked northward toward the crossing; Olson, the signal man, remained south of the crossing and some distance from the string of cars that he might receive signals from Cooper and relay them around the curve to the engineer; Demaray, the pin puller, walked in a southwest direction and toward the engine and cars. The empty oil tank car on the north end of the string was to be stored on track No. 4. It was known to the switchmen testifying that such cars were stored on said track. So while the men were assuming positions, Cooper decided to kick the tank car on to track No. 4 as they proceeded to the scale track. Thereupon, from the crossing, he gave a signal to shove north which was relayed by Olson to the engineer, who re-

sponded by moving northward. After moving a short distance, the engine and cars were stopped until another engine moved from said tracks. The engine and cars then started northward. About this time Cooper gave a signal to cut off one car and then gave the signal to kick. The witnesses do not agree on Demaray's exact location at the time the cut-off and kick signals were given by Cooper. Plaintiff contends that at about said time Demaray was attempting to board the oil tank car for the purpose of either uncoupling and switching it to track No. 4 or for the purpose of riding and relaying signals to the engineer as they proceeded to the scale track. And she further contends the "kick of the cars" without warning caused Demaray to miss or lose hold of the grab iron on the car, thereby causing him to fall across the rail and be injured. Defendant contends that Demaray was not attempting to board the car but was attempting to get hold of the pin lifter or the grab iron in an effort to uncouple and switch said car to track No. 4, and that he missed both, thereby causing said fall and injury.

One or more witnesses testified that after Demaray was injured and before he had been removed from under the car that he said: "Waddie (Waddell) said shove into the scales! Waddie (Waddell) said shove into the scales!"

Defendant contends that the court erred in admitting this evidence. It claims that deceased may have been unconscious at the time, and further claims that the statement was a mere recitation of a past event. An examination of the record discloses no evidence tending to show that deceased was unconscious at the time he made the statement or at any time before his death. The statement was made immediately following the injury and while he was under the car. It was part of the *res gestae.* [Woods v. St. Louis Merchants' Bridge Terminal Ry. Co., 8 S. W. (2d) 922; Nahorski v. St. Louis Electric Terminal Ry. Co., 271 S. W. 749.]

Defendant next contends that the court erred in refusing its instruction in the nature of a demurrer to the evidence. It claims there is no evidence tending to show that deceased did not know the cars were to be kicked.

Olson, who relayed signals from Cooper to the engineer, testified that Cooper gave a signal to shove, which he passed to the engineer; that at this time Demaray was five or six cars lengths from the cars and walking toward them; that the engineer responded by shoving the cars northward; that he was watching Cooper for signals and when the cars had been shoved three or four car lengths he received a kick signal from Cooper and passed it to the engineer; that at this time Demaray was about the middle of the oil tank car and was walking along the side of the car toward the engine with his back

594

to Cooper; that the engineer immediately responded by kicking the cars; that he saw yardmaster Waddell throw up his arms and run toward the office; that this caused him to look toward the engine and cars; that he did not see Demaray fall but saw him under the wheels of the second car; that he gave a violent stop signal; that the engineer stopped as quickly as possible and that he and other switchmen removed Demaray from under the car and to the "shanty."

Land, a switchman for the "Frisco" Railroad in said yards, testified that he saw Demaray walking toward the cars as they moved northeastward; that Demaray was looking toward the southwest at the time; that when near the oil tank car he attempted to take hold of the grab iron on said car and at that time Olson gave a kick signal; that the engineer responded by kicking and suddenly moving the cars, and that the end of the next car, which was eighteen inches wider than the tank car, hit Demaray in the back, threw him around and across the rail and the wheels ran over him; that he noticed Demaray after he reached a point alongside of the moving cars; that he was walking toward the engine but turned and trotted along in the direction in which the cars were moving and that he saw him make an effort to take hold of the grab iron on the oil tank car.

On cross-examination the testimony of Land was not definite as to the exact location of Demaray at the time he turned and trotted along in the direction in which the cars were moving. He testified that it seemed to him that after Demaray turned that he trotted ten or twelve feet in said direction before he made an effort to take hold of the grab iron; that he (Land) was looking at Demaray in a diagonal direction, and for that reason could not exactly locate him with reference to the space between the oil tank car and the next car; that he could not state that he saw deceased run after the oil tank car.

From the evidence of these witnesses and the evidence of the statement of deceased that "Waddic (Waddell) said shove into the scales," the jury could find that deceased did not know the cars were to be kicked.

Defendant also claims there is no evidence tending to show that deceased was under a duty to board the oil tank car. Foreman Cooper testified that he did not know of the injury until the cars had been stopped; that he was watching traffic on the crossing and was not in a position, at the time of injury, to see the string of cars; that the purpose of at first shoving the cars was to give the pin puller (Demaray) an opportunity to board the car for the purpose of uncoupling it before the cars are kicked; that this was customary in that yard. He further testified that if he had not decided to switch the oil tank car to track No. 4, it would have been Demaray's duty

to ride the cars to the scale track that he might be in a position to pass signals to the engineer; that Demaray was not required to ride any particular car for that purpose. Other witnesses gave testimony to the same effect. In making this claim defendant has overlooked the testimony of these witnesses. Of course, Demaray could ride either car to pass signals. Plaintiff contends that if Demaray did not know that the oil tank car was to be switched on to track No. 4 that he boarded said car to pass signals and ride to the scale track.

Defendant also contends that deceased assumed the risk of injury and for that reason the jury should have been directed to return a verdict for defendant.

In making this contention defendant proceeds on the theory that deceased was not attempting to board the car but that he slipped or stumbled in attempting to uncouple it while on the ground. The evidence favorable to defendant tends to sustain this theory, but, as stated, there was substantial evidence tending to show that deceased was attempting to board the car to either pass signals or to uncouple it. The deceased did not, as a matter of law, assume the risk of injury from the failure of a co-employee to warn him of the intended sudden movement of the car, contrary to a long established custom existing in said yard. [Reed v. Director General, 258 U. S. 92, 1. c. 95; Martin v. Railway Co., 325 Mo. 1107, 30 S. W. (2d) 735, 1. c. 749.] We think the demurrer was well ruled.

Defendant next contends that Instruction 1 given at the request of plaintiff was in conflict with Instruction E given at the request of defendant. Instruction 1 authorized the jury to find that it was necessary for the deceased to board the oil tank car. Instruction E directed the jury that there was no evidence tending to show that it was deceased's duty to board the car. We have ruled that there was substantial evidence tending to so show. It follows that Instruction 1 correctly directed the jury on that issue. It also follows that the court was in error in giving Instruction E. The conflict could not have been prejudicial to defendant. [Moran v. Kansas City Railways Co., 232 S. W. 1111; Evy v. Davis, 244 S. W. 954; Spencer v. Railroad, 317 Mo. 492, 297 S. W. 353; Baker v. Railroad, 122 Mo. 533, 26 S. W. 20.]

Defendant next contends that Instruction 1 was "erroneous because it purported to cover the entire case and authorize a verdict in plaintiff's favor without including the element of assumption of risk." In ruling this question in Shaw v. Railroad, 282 S. W. 416, we said:

"There is . . . a charge that Instruction No. 2 was error, because it did not mention therein the defense of assumption of risk. Assumption of risk is an affirmative defense, and must be properly

pleaded and shown, and is not a constituent element of plaintiff's case, and therefore need not be included in plaintiff's instruction. Such is the effect of the ruling in State ex rel. Ambrose v. Trimble, 263 S. W. 840, 304 Mo. 533.''

■ Defendant next contends that Instruction 3, given at the request of plaintiff, was erroneous for the reason it directed the jury on an issue of contributory negligence. There was no such issue in the case and that part of the instruction should not have been given. However, it could not have been harmful to defendant. [Spencer v. Railroad, 317 Mo. 492, 297 S. W. 353, 1. c. 356.]

The judgment should be affirmed. It is so ordered. All concur.