MARY SCHOENHERR, Guardian of HENRY SCHOENHERR, v. S. R. STOUGHTON and TRAVELERS INSURANCE COMPANY, Appellants.— 78 S. W. (2d) 84.

Division Two, January 7, 1935.

*Jones, Hocker, Sullivan, Gladney & Reeder* for appellants.

*Frank J. Quinn* and *Frank Coffman* for respondent.

WESTHUES, C.—This is an appeal from a judgment of the Circuit Court of the City of St. Louis, affirming an award of the Workmen's Compensation Commission. An appeal was granted to the St. Louis Court of Appeals. Appellants contend that the appeal should have been granted to this court because the amount involved was in excess of $7500. The Court of Appeals transferred the case here and we think rightly so.

Appellants contended that they had paid the full amount due under the Compensation Law. The record discloses that the award which was affirmed by the circuit court, after giving credit for what had been paid, was in excess of $7500. Appellants' brief contains a fair statement of the undisputed facts which we adopt as our own. It reads:

"Henry Schoenherr was employed by S. R. Stoughton as a tuck-pointer. On the morning of March 20, 1929, while engaged in his work, and while standing on a ladder or scaffold the scaffold gave way and Schoenherr fell to the ground, a distance of some thirty or thirty-five feet. He suffered a fracture of his lower right leg, a fracture of the end of his little finger and a mild compression fracture of the lower part of his spine, the third lumbar. He was taken to Barnes Hospital and treated there for some six weeks. He re-

sumed his work in September, 1929, and continued in said work until May, 1930, since which time he has been idle. On February 19, 1932, he was adjudicated insane by the St. Louis Probate Court, and his wife, Mary Schoenherr, was appointed guardian.

"Claim was filed with the Compensation Commission, and after a hearing had before that Commission on May 24, 1932, before Referee Graff, claimant was found to be permanently totally disabled, and an award was made of $20.00 per week for 300 weeks, total $6,000.00; and $17.31 per week thereafter for life. Credit was allowed for $2,700.00, which had already been paid in the way of compensation. Henry Schoenherr was fifty years old and, under the American Experience Tables of Mortality, had an expectancy of 20.91 years. The amount involved under the award is therefore $6,000.00, plus $18,821.51 ($17.31 × 52 × 20.91), or a total of $24,821.51, less $2,700.00 credit for compensation theretofore paid, making a net total amount involved of $22,121.51. . . . .

"An application for review before the whole Commission was duly filed, and the Commission affirmed the award of the Referee. An appeal was duly taken to the Circuit Court of the City of St. Louis, where a decree was entered affirming the finding and award of the Compensation Commission, whereupon an appeal was granted."

At the hearing before the commission appellants' sole defense was that the permanent total disability, that is, insanity of the injured party, was due to alcoholism and not to the injuries received. Claimant urged that the insanity resulted from the injuries.

The sole question on this appeal is whether the evidence justified a finding that the insanity of Schoenherr was the result of the injuries recieved in the accident. Appellants earnestly insist that it did not, and we will, therefore, examine the record. Two medical experts, Dr. Charles W. Thierry and Dr. P. J. Farmer, testified that they examined Schoenherr and from that examination and a history of the case, obtained from the patient and the doctor who waited on him, it was their opinion the insanity was the direct result of the injury and not due to alcoholism. Schoenherr was a tuckpointer by trade. The evidence discloses that during the past twenty-seven years he had worked for two employers. Appellant Stoughton, for whom he had worked for seven years immediately preceding his injury, testified that practically all of Schoenherr's work was done from a scaffold. Part of his testimony was as follows:

"Q. What was his condition, if you know, with reference to sobriety at the time you saw him in the hospital? A. With reference to what?

"Q. Sobriety—was he drunk or sober? A. No, he wasn't drunk; he was sober when I seen him.

"Q. When did you next see him after that first time? A. I think it was the next evening at the hospital; I am not sure.

"Q. What was his condition then? A. How do you mean?

"Q. Was he suffering with hallucinations or anything of that kind? A. Not the first few days he wasn't.

"Q. When did you first notice that? A. After he had been in the hospital; I don't know just how long it was; I know I went over one night; he claimed somebody was talking about him out in the hall; he wanted me to go out and tell them to stay away from there; that is the first I noticed. . . .

"Q. Mr. Stoughton, this was rather hazardous work that Mr. Schoenherr performed, was it, working on a scaffold or ladder all the time? A. Yes.

"Q. If a man were addicted to drink would he be capable of performing his duties on a ladder or scaffold? A. If he would get to drinking, he wouldn't.

"Mr. Quinn: That is all."

Examination, by the Referee:

"Q. I believe you testified this man worked for you seven years? A. Six or seven years; when he first went to work for me, I think it was in 1923, he didn't work for me steady for a while; when I first moved on Cote Brilliante, he worked steady for me from then on.

"Q. Was he a steady worker? A. Yes.

"Q. Good worker? A. He was as good a man as there was in the business.

"Q. Was he a reliable man? A. Yes.

"Q. Was he ever intoxicated on the job? A. I never seen him intoxicated on the job; no, sir.

"Q. And what did his work consist of; what did he have to do? A. Clean down brickwork, finish it up, pointing.

"Q. Was he always working on a scaffold? A. The biggest part of the time, only when he came down to the ground; he had to finish the ground work up.

"Q. Most of his work consisted of being on the scaffold? A. Yes, take the building from top to bottom.

"The Referee: That is all."

Further Cross-examination, by Mr. Harrison.

"Q. Did you ever see Schoenherr have anything to drink? A. I seen him two or three times when he had too much, yes.

"Mr. Harrison: That is all."

Claimant, the wife of Schoenherr, testified in part as follows:

"Q. How long have you been married to Mr. Schoenherr? A. Twenty-seven years the 4th of January last.

"Q. And during that period of time did he work steadily? A. Yes.

"Q. How many days a week or month would you say he worked and what was his average wage, do you recall? A. He worked all the time, you know, when he had work to do; of course, when it

rained, or winter sometime when it snowed, or froze, he couldn't work, but otherwise he worked all the time.

"Q. What was his condition with reference to sobriety; was he a man that drank a great deal? A. Not a great deal, no; he drank a glass of beer like any ordinary man would."

As against this testimony appellants introduced evidence tending to show that the cause of insanity was alcoholism. Dr. Barnes, an expert, testified that from a history of the case and an examination made it was his opinion that the insanity was entirely due to the habitual and excessive use of whisky. Evidence was introduced showing that the patient, while at the hospital and a few days following the injury, suffered from delirium tremens and was given the usual treatment prescribed for that ailment. Dr. J. A. Key, who treated the injured party, testified that he did not suffer any surgical shock; that he learned from the patient that he drank much whisky, at times as much as a pint a day; also that the patient had the appearance of having been addicted to the use of alcohol. The hospital records, introduced, disclosed that the patient had been treated for delirium tremens.

In appellants' brief it is stated that: "Expert testimony must be based upon actual facts in evidence or upon a hypothetical question which properly assumes facts" that "expert testimony based upon subjective symptoms is of no probative value" and also "expert testimony is entirely improper and of no weight or probative value whatsoever if it is based upon assumed facts not in evidence, or upon disputed or disproven facts." Cases were cited in support of these contentions. We do not deem them in point or applicable to this case. It will be noted that the expert testimony offered by respondent and appellant in this case was of the same character. Under the rule pertaining to expert testimony it was proper for the guidance of the triers of fact. [High v. Ry. Co., 318 Mo. 444, l. c. 452, 300 S. W. 1102; Spencer v. Quincy, O. & K. C. Railroad Co., 317 Mo. 492, 297 S. W. 353, l. c. 357.] Appellants' experts, as well as respondent's based their opinions as to the cause of insanity not upon hypothetical questions but principally upon a history of the case, which the experts personally obtained, and from an examination of the patient. As was said in Spencer v. Ry. Co., supra:

"The opinion of an expert, when admissible at all, is evidence; . . . and its value as evidence is always for the jury."

In Wack v. Schoenberg Mfg. Co., 331 Mo. 197, 53 S. W. (2d) 28, l. c. 31 (5, 6, 7), this court held such expert evidence to be proper. This opinion discusses at length the question now before us. [See, also, Ridge v. Norfolk So. Ry. Co., 167 N. C. 510, 83 S. E. 762, l. c. 771 (20, 21), L. R. A. 1917E, 215; Travelers' Ins. Co. v. Bingham, 105 S. W. 894, 32 Ky. L. Rep. 233; 22 C. J., p. 661, sec. 758.] The only evidence introduced by appellant, tending to prove

that Schoenherr had been addicted to an excessive use of liquor, was given by experts who testified that they obtained their information from the patient. On the other hand, witnesses for claimant testified that they obtained a history from the patient, which led them to believe that he had not used liquor to such an extent as to render him subject to delirium tremens. Claimant's experts also testified that a fall of thirty-five feet and the injuries the patient received by reason of this fall could have caused a sufficient shock and concussion of the brain to produce delirium tremens.

The evidence, aside from the experts', tends to support claimant's theory that Schoenherr had not drunk whisky in such quantities as would result in delirium tremens if the use of such whisky were abruptly terminated by reason of being placed in the hospital due to his injuries. The fact that he had for many years worked steadily upon scaffolds was certainly strong evidence in claimant's favor. The nature of his work was such that he could not perform it while in an intoxicated condition. Appellant Stoughton, the employer, was certainly in a better position than anyone to know the habits of Schoenherr as to sobriety, and, as will be noted, Stoughton testified that Schoenherr worked steadily, was always sober on the job and was one of the best men in his line of work. From a reading of the record we not only conclude that there was sufficient evidence to support the award but that the evidence of claimant outweighed that of appellants.

We must, therefore, and do hereby, affirm the judgment. *Cooley, C.,* concurs; *Bohling, C.,* not sitting.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.